Sande L. **WRIGHT, Appellant,**

v.

Tony **VICKARYOUS, Appellee.**

No. 4580.

Supreme Court of Alaska.

May 2, 1980.

---

Ernest Z. Rehbock, Rehbock & Rehbock, Anchorage, for appellant.

Noel H. Kopperud, Dan W. Burton, Wasilla, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

On January 8, 1977 Vickaryous bought forty-five head of cattle from Wright at an auction sale. His bid was $13,032.50. Unknown to Vickaryous at the time, the Farmer's Home Administration, the Northwest Livestock Production Credit Association, and the State of Alaska Revolving Loan Fund each held perfected and filed security interests on the cattle. However, they had consented to the auction sale of the cattle in conversations with Wright. Thus, under the terms of section 9–306(2) of the Uniform Commercial Code as enacted in Alaska, their security interests were released by the sale.[1]

Shortly after the auction, and on the same day that it was held, Wright and Vickaryous modified the sale contract to provide that Vickaryous would pay $1,000.00 down with the balance of the purchase price to be paid on or before delivery, no later than January 14th. Vickaryous then was told by a third party that there were liens on the cattle. The next day, an employee of Wright tendered delivery of the cattle to Vickaryous. He told the em-

---

1. Section 9–306 is codified as AS 45.05.742. Subsection (b) provides:

 Except where §§ 690–794 of this chapter otherwise provide, a security interest continues in collateral notwithstanding sale, exchange, or other disposition of it by the debtor unless his action was authorized by the secured party in the security agreement or otherwise . . .

ployee that he would not accept them because of the liens. On Monday, January 10th, Vickaryous contacted an attorney and asked him to determine whether the cattle were encumbered; the attorney discovered the filed security interests and advised Vickaryous of their existence. Vickaryous then stopped payment on the $1,000.00 check he had given as a down payment.

On Tuesday, January 11th, Wright served Vickaryous with a notice of intent to resell the cows and hold Vickaryous responsible for any deficiency. An auction resale was conducted on January 15th at which $3,166.00 was received. The expenses of resale were $1,025.00.

Wright brought this action to recover the difference between the contract price with Vickaryous and the resale price plus costs.

Trial was to the court. The court determined that although the security interests were released as a matter of law against Vickaryous, they remained of record and constituted "a substantial shadow" over the title to the cattle, sufficient to breach the warranty of freedom from encumbrances provided by section 2–312 of the U.C.C. The court found that since Wright made no effort to cure the uncertainty which constituted the breach of warranty he was not entitled to hold Vickaryous liable for breach of the sale contract.

Wright's main point on appeal is that there was no breach of the warranty of freedom from encumbrances since he had obtained the consent to sale of the secured parties and, therefore, their security interests were discharged as a matter of law. Vickaryous counters, and the court held, that the existence of apparently valid security interests on file constituted a cloud on the title and therefore a breach of warranty in the absence of an explanation by Wright that the security interests had been discharged.

**2.** AS 45.05.092(b).

**3.** In *Ficke v. Alaska Airlines, Inc.*, 524 P.2d 271 (Alaska 1974), we expressed the concept of marketable title with respect to real estate as follows:

> The test is whether a conveyance carries with it a reasonable probability that the pur-

 Unless explicitly excluded, or the circumstances are such as to indicate otherwise,[2] there is in every contract for the sale of goods a warranty that the title is good, and that the goods will be delivered free from encumbrances. This warranty is expressed in U.C.C. § 2–312(1) (AS 45.05.-092(a)) which provides:

> Subject to (b) of this section there is in a contract for sale a warranty by the seller that
>
> (1) the title conveyed shall be good, and its transfer rightful; and
>
> (2) the goods shall be delivered free from a security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

The official commentary to section 2–312 states:

> Subsection (1) makes provision for a buyer's basic needs in respect to a title which he in good faith expects to acquire by his purchase, namely, that he receive a good, clean title transferred to him also in a rightful manner *so that he will not be exposed to a lawsuit in order to protect it.* [emphasis added]

*Uniform Commercial Code* § 2–312, Comment 1. The emphasized language makes it clear that a marketable title concept is intended,[3] for otherwise it would not be important whether a buyer was merely exposed to a lawsuit, but rather whether he could win it.

Cases decided in other jurisdictions confirm our view that section 2–312 expresses a concept of marketable title. In *American Container Corp. v. Hanley Trucking Corp.*, 111 N.J.Super. 322, 268 A.2d 313, 318 (1970) the court stated the following with respect to the section 2–312 warranty:

> The purchaser of goods warranted as to title has a right to rely on the fact that

chaser will be subjected to a lawsuit. [citations omitted] . . . [Marketable title is not vitiated by] a technical defect which does not support a reasonable question of the validity of the [buyer's] prospective title. 524 P.2d at 276.

he will not be required, at some later time, to enter into a contest over the validity of his ownership. The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title.

*Accord, Ricklefs v. Clemens*, 216 Kan. 128, 531 P.2d 94, 100 (1975). Other authorities involving the sale of personal property, not decided under the Uniform Commercial Code, likewise have concluded that a buyer need not complete a purchase which apparently will require a lawsuit to protect that which is acquired. *See, e. g., Mundy v. Casualty Claims Service, Inc.*, 527 P.2d 614 (Okl.App.1974); *Stuart v. University Lumber & Shingle Co.*, 66 Or. 546, 132 P. 1 (1913).

■ Under the facts of this case Wright could easily have saved the transaction by explaining that the sale was made with the consent of the secured parties and that their liens were discharged.[4] Remarkably, he chose not to do so, and thus his breach stands.

Wright also challenges the court's award of attorney's fees in the sum of $3,475.92. This amount is approximately one-third of the actual attorney's fees incurred by Vickaryous. Before trial Wright refused an offer of judgment made by Vickaryous pursuant to Civil Rule 68.[5] The court expressly increased the award of attorney's fees because of this.

■ Wright contends that Civil Rule 68 does not apply since it operates only when the offeree obtains judgment in his favor. That interpretation would mean that when an offeree prevails, but his judgment does not exceed the offer, he will be penalized, but if he does not prevail at all no penalty will be imposed. We see nothing to recommend such a result, and thus reject the interpretation offered by Wright.

We do not regard the award of attorney's fees as manifestly unreasonable[6] and it therefore will not be disturbed. *See Chugach Electric Association v. Northern Corp.*, 562 P.2d 1053, 1063 (Alaska 1977).

AFFIRMED.

---

4. U.C.C. § 2–508(1) (AS 45.05.146(a)) provides: *Cure by seller of improper tender or delivery; replacement.* (a) If a tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may reasonably notify the buyer of his intention to cure and may then, within the contract time, make a conforming delivery.

5. Civil Rule 68 provides:
*Offer of Judgment.*
At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to commencement of hearings to determine the amount or extent of liability.

6. To the contrary, we compliment Judge Souter on his well-reasoned resolution of the attorney's fees issues.