640 P.2d 515

**John J. C. O'SHEA, Rita M. O'Shea and Kelley Ann O'Shea, Plaintiffs-Appellees,**

v.

**Pete HATCH & James E. Hatch, D/B/A Hilltop Ranch, Defendants-Appellants.**

**No. 5274.**

Court of Appeals of New Mexico.

Jan. 19, 1982.

Wm. F. Brainerd, Roswell, for defendants-appellants.

John J. C. O'Shea, O'Shea & Hall, P. C., Lubbock, Tex., for plaintiffs-appellees.

## OPINION

DONNELLY, Judge.

Defendants appeal from a judgment awarding damages against them in the sum of $4,196.10. The trial court determined that defendants, in their sale of a quarter

horse to plaintiffs, had breached an implied warranty of fitness under the Uniform Commercial Code (U.C.C.), that the animal was suitable as a show horse and of a temperament and disposition suitable for riding by children.

In mid-January 1976, plaintiffs purchased the horse as a colt from defendants for $3,250.00. At the time of the sale, plaintiffs, John and Rita O'Shea, informed defendants that they wanted a horse that could be used as a show horse, which could be ridden by their teen-age daughter and which would be suitable and safe around children. Defendants represented the horse to be a registered gelding and of gentle disposition, suitable for use by children. After plaintiffs took delivery of the horse at defendants' ranch, they sent the horse to a trainer to have the animal "green-broken" for saddle riding. When the horse was sufficiently saddle-broken, plaintiffs took the horse to their home at Lubbock, Texas, where they kept other horses. Shortly after the arrival of the horse at their stables, plaintiffs observed that the horse exhibited stallion-like characteristics, fought with stallions, and was aggressive and uncontrollable.

Plaintiffs had the horse inspected by a veterinarian who confirmed that the horse had not been properly gelded and was a ridgeling. In April, 1976, plaintiffs notified defendants of the unsuitability of the animal for the purposes for which it was purchased and demanded return of their purchase money and expenses incurred in training the animal. Defendants refused to rescind the sale, but offered to trade another horse for the animal. Plaintiffs, however, inspected the other horses offered but found them unsatisfactory. Defendants offered to pay the veterinary costs to have an undescended testicle surgically removed from the horse, but again refused to rescind the sales agreement.

In June, 1976, plaintiffs took the horse to a veterinarian who operated on him and confirmed that the horse was a ridgeling. According to testimony presented by plaintiffs, after the surgery the horse was a gelding, although it exhibited a lack of coordination and disposition for use as a show horse and as a riding horse for children.

Plaintiffs filed suit in January, 1980, against defendants, alleging three alternative causes of action: (1) breach of implied warranty; (2) breach of express warranties; and (3) fraudulent misrepresentation and concealment of the sexual condition and character of the horse. From a judgment awarding plaintiffs damages, defendants appeal. We affirm.

On appeal, defendants allege as error the trial court's refusal to adopt a number of requested findings of fact and conclusions of law submitted by them. Specifically, defendants seek reversal based upon the court's refusals (1) to adopt defendants' requested conclusion of law no. 3; (2) conclusion of law no. 6; and (3) defendants requested findings of fact no. 11, conclusions of law nos. 4 and 5; and on the ground that the court erred in adopting its finding of fact nos. 19 and 20, and conclusion of law no. 3.

Defendants' requested finding of fact no. 11, refused by the court, provided:

11. Since the operation in July 1976, Plaintiffs have continued to use the horse, entering him in various shows, in various classes, on numerous occasions.

The applicable requested conclusions of law of defendants, which were rejected by the court, were:

3. Plaintiffs' actions in having the horse repaired surgically bind them to their acceptance and bar any attempt to revoke their prior acceptance. Such action amounts to the exercise of dominion or ownership of the horse.

4. Continued use of the horse by plaintiffs for five (5) years bars any right by plaintiffs to revoke their acceptance of the horse.

5. Having the horse repaired or altered surgically and using him for five (5) years thereafter is inconsistent with any claim that plaintiffs intended to revoke their acceptance of the horse in the Spring of 1976.

6. After the operation in 1976, the horse was, in fact, a gelding and met the specifications agreed upon by the parties at the time of sale. Thereupon plaintiffs no longer had any grounds upon which to claim revocation of their prior acceptance of the horse.

The court's adopted findings nos. 19 and 20, were as follows:

19. The conduct of the Plaintiff John J. C. O'Shea phoning Mr. Hatch on two separate occasions amounted to effective revocation of the sale and demand for the return of the funds and recoverable damages.

20. The Plaintiffs revocation of acceptance was timely within the terms of the Uniform Commercial Code.

The court's conclusion of law no. 3, challenged by defendants, stated:

3. Plaintiff effectively revoked acceptance as authorized by the Uniform Commercial Code.

### 1) *Refusal to Adopt Conclusions of Law*:

Defendants' first point on appeal alleges as error the refusal of the trial court to adopt defendants' requested conclusion of law no. 3, *supra*. Defendants' second asserted claim of error argues that the trial court erred in not adopting defendants' requested conclusion of law no. 6, *supra*. We discuss defendants' first and second points, jointly.

Defendants assert that plaintiffs' action in having the horse operated upon and engaging in the continued use of the horse and exhibition of it at several horse shows after ascertaining the horse was not a gelding, and after making demand for revocation of the sale, amounted to acts of dominion and ownership, which bar revocation of their prior acceptance of the animal under § 55–2–606, N.M.S.A.1978. The U.C.C. is determinative of the legal issues involved in this case. The term "goods" as used in the U.C.C., § 55–2–105(1), N.M.S.A.1978, includes livestock since they are frequently intended for commercial sale. *See Fear Ranches, Inc. v. Berry*, 470 F.2d 905 (10th Cir. 1972); *Grandi v. LeSage*, 74 N.M. 799,

399 P.2d 285 (1965). Section 55–2–606 provides in applicable part:

(1) Acceptance of goods occurs when the buyer:

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection * * *; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him. * * *

█ A buyer of goods who, after having a reasonable opportunity to inspect them and with full knowledge of any defect in them, makes further payments, performs acts of dominion, or other acts inconsistent with any intention to rescind, may be deemed to have accepted the goods or ratified the sale. *Southern Union Gas Co. v. Taylor*, 82 N.M. 670, 486 P.2d 606 (1971); *Woods v. Van Wallis Trailer Sales Co.*, 77 N.M. 121, 419 P.2d 964 (1966). Similarly, a material alteration of goods by a buyer will void a prior revocation of acceptance. *Butcher v. Garret-Enumclaw Co.*, 20 Wash. App. 361, 581 P.2d 1352 (1978); *see also Can-Key Industries, Inc. v. Industrial Leasing Corp.*, 286 Or. 173, 593 P.2d 1125 (1979).

█ Defendant, James E. Hatch, testified that, after gelding the horse and prior to the sale of the animal to plaintiffs, he took the horse back to a veterinarian to have him checked because he noticed the colt was aggressive with other colts. He also testified that, at the time of the sale of the horse, he represented to plaintiffs that the horse was a gelding, and that, after the plaintiffs demanded that the sale be rescinded and a veterinarian had informed plaintiffs that the horse was possibly a ridgeling, defendant told plaintiffs,

"Well, if he is sure of it, have him operated on and I will pay for it."

Defendants, having suggested and consented to the operation upon the horse to insure that the animal was not a ridgeling,

cannot under the facts of this case use the operation as a bar to plaintiffs rescission of the sale.

Defendants' contend that the trial court erred in refusing to adopt their tendered conclusion of law no. 3, to the effect that plaintiff's actions in having the horse operated upon barred any attempt to revoke their prior acceptance and amounted to an exercise of dominion or ownership of the horse. The contention is without merit.

■■■■ A "conclusion of law" is a decision of the court stemming from the ultimate factual issues which determine the result of the dispute in a non-jury trial. *C.I.T. Corp. v. Elliott*, 66 Idaho 384, 159 P.2d 891 (1945); *State ex. rel. Oregon State Board of Higher Education v. Cummings*, 205 Or. 500, 288 P.2d 1036 (1955). A conclusion of law must find support in the findings of fact. *Watson Land Co. v. Lucero*, 85 N.M. 776, 517 P.2d 1302 (1974); *House of Carpets, Inc. v. Mortgage Investment Co.*, 85 N.M. 560, 514 P.2d 611 (1973). Ultimate facts are the facts which are necessary to determine the issues in the case, as distinguished from the evidentiary facts supporting them. *Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968).

The trial court's conclusion of law no. 3, determining that plaintiffs effectively revoked acceptance of the horse under the provisions of the U.C.C. was supported by the court's findings of fact nos. 19 and 20, *supra*. Defendants requested conclusion of law no. 6, *supra*, was inconsistent with the court's finding of fact no. 17:

> 17. The horse recovered from its surgery and exhibited a lack of coordination and attitude necessary for the horse for the purpose intended by Plaintiffs.

■■ Requests for findings of fact and conclusions of law that would have been inconsistent with findings and conclusions actually made by the trial court are properly refused. *Cy.Anschutz and Associates v. Conley*, 74 N.M. 363, 393 P.2d 710 (1964); *Jackson v. Goad*, 73 N.M. 19, 385 P.2d 279 (1963); *Herrera v. C & R Paving Co.*, 73 N.M. 237, 387 P.2d 339 (1963).

■■ The trial court's refusal to adopt defendants' requested conclusions of law nos. 3 and 6 was not error. Conclusion of law no. 3 was based on other findings of the trial court and supported by substantial evidence. Defendant's first and second points on appeal are without merit.

2) *Refusal to Adopted Requested Findings*:

Defendants' final point on appeal asserts as error the trial court's refusal to adopt their requested finding of fact no. 11, requested conclusion of law nos. 4 and 5; and the court's adoption of its findings of fact nos. 19 and 20, and its conclusion of law no. 3.

■■ Defendants assert that the evidence is clear and uncontradicted that plaintiffs continued to use the horse as a riding horse and exhibited the horse in several horse shows after taking possession of the animal and until shortly prior to trial of this case. Based upon such evidence, defendants argue that the trial court was required to find that plaintiffs' continued use of the horse, together with plaintiffs having the horse re-operated upon, amounted to ratification of any defect in the animal and acceptance of the original sale. Defendants further assert that the court's findings of fact nos. 19 and 20, *supra*, are in the nature of conclusions and not ultimate findings of fact. Although these contested findings are conclusionary in their nature, they are supported by substantial evidence and the trial court's conclusions of law are supported by other findings of fact it adopted. Refusal of a trial court to make certain findings and conclusions requested by appellant, is at best harmless error where the record supports the court's determination and there are other findings adopted by the court supporting its result. On appeal, we review to correct an erroneous result, rather than merely to approve or disapprove the grounds on which the trial court's decision is based. *Wiggs v. City of Albuquerque*, 57 N.M. 770, 263 P.2d 963 (1953); *see also Prude v. Lewis*, 78 N.M. 256, 430 P.2d 753 (1967).

Defendants also repeat the argument raised by them under their first point on appeal, that plaintiffs' attempted revocation of the sale was voided by their subsequent action amounting to acts of dominion and ownership over the animal. As discussed herein, *supra*, there is substantial evidence in the record to support the challenged findings adopted by the court.

In addition to adopting findings nos. 19 and 20, supra, the court adopted finding no. 14, determining that defendants refused to rescind the sale and return plaintiffs' purchase money and expenses for training the horse.

The trial court, in its findings of fact nos. 6 and 7, found that defendants knew plaintiffs desired to use the horse as a show horse and around children, and the plaintiffs relied upon the representation of defendants that the horse was a gelding and of gentle disposition. The court found that, under the U.C.C., defendants had impliedly warranted that the horse was gentle and a gelding. The court's conclusion of law no. 2 determined that defendants' sale of the horse was a breach of the implied warranties of the U.C.C. Action for breach of an implied warranty of the fitness of a horse is proper where the horse is represented as a gelding but is in fact a ridgeling. *See Douglass v. Moses*, 89 Iowa 40, 56 N.W. 271, 65 N.W. 1004 (1896); compare *Grandi v. LeSage, supra; see also Calloway v. Manion*, 572 F.2d 1033 (5th Cir. 1978); *Erickson v. Poulsen*, 15 Utah 2d 190, 389 P.2d 739 (1964); Annot.'s, 91 A.L.R.3d 419 (1979), (Sale of Horse-Breach of Warranty); 17 A.L.R.3d 1010 (1968), (U.C.C.—Sales); 53 A.L.R.2d 892 (1957), (Implied Warranty of Fitness of Livestock).

Defendants raise as error the court's conclusion of law no. 3, which concluded that plaintiffs effectively revoked acceptance of the sale of the animal as authorized by the Uniform Commercial Code.

Defendants rely upon § 55–2–608, N.M.S.A.1978, of the U.C.C., which sets out in applicable part:

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Although defendants correctly cite the general rule that a buyer of goods must revoke acceptance of goods within a reasonable time after the sale has occurred and before any substantial change in the property has taken place, the question of what is a "reasonable time" within which to rescind a sale is a question of fact which differs under the fact of each case. *Frontier Mobile Home Sales, Inc. v. Trigleth*, 256 Ark. 101, 505 S.W.2d 516 (1974); *Irrigation Motor and Pump Co. v. Belcher*, 29 Colo.App. 343, 483 P.2d 980 (1971); *see also Ybarra v. Modern Trailer Sales, Inc.*, 94 N.M. 249, 609 P.2d 331 (1980).

As held in *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592 (Okl. 1981), after a buyer has determined that there has been a breach of warranty relating to the property sold, the buyer must give notice to the seller within a "reasonable time" after he discovers or should have discovered the breach, to avoid liability for the sale under § 55–2–607(3)(a) of the U.C.C. The notification may be either oral or in writing and is sufficient if it is informative to the seller of the general nature of the difficulty encountered with the warranted goods. The purpose of the statutory requirement of notice to the seller of breach of warranty is to enable the seller to minimize damages in some manner, if possible to correct the defect, and also to give the seller some immunity against stale claims. The sufficiency of notice and what is considered a reasonable time within which to give notice of breach of warranty are ordinarily questions of fact, based upon the circumstances of each case.

Similarly, whether a buyer accepts goods by subsequent acts inconsistent with the seller's ownership is a question of fact to be determined from the evidence in each particular case. *Dehahn v. Innes*, 356

A.2d 711 (Me.1976); *Johannsen v. Minnesota Valley Ford Tractor Co.*, 304 N.W.2d 654 (Minn.1981). Absent a specific provision in a sales contract, a buyer has a reasonable time within which to determine whether or not the goods are defective, and the time depends upon all the circumstances surrounding the transaction. The actions of the parties may affect what is deemed to constitute a reasonable time. *Stephens Industries, Inc. v. American Express Co.*, 471 S.W.2d 501 (Mo.Ct.App.1971); *American Fertilizer Specialists, Inc. v. Wood, supra.*

Notwithstanding a buyer's original acceptance of delivery of goods, a buyer who justifiably revokes his acceptance under § 55–2–608, N.M.S.A.1978, has the same right to rescission as though he had rejected the goods in the first place. *Grandi v. LeSage, supra.*

Where a buyer notifies a seller of revocation of acceptance of goods, and receives no instructions from the seller concerning the return or disposition of the property, the buyer is entitled to retain possession of such property. *Erling v. Homera, Inc.*, 298 N.W.2d 478 (N.D.1980). Continued possession and reasonable use of property after the buyer has notified seller of revocation of acceptance, under the U.C.C. does not as a matter of law constitute waiver of the right to revoke acceptance. *Mobile Home Sales Management, Inc. v. Brown*, 115 Ariz. 11, 562 P.2d 1378 (Ct.App.1977); *Minsel v. El Rancho Mobile Home Center, Inc.*, 32 Mich.App. 10, 188 N.W.2d 9 (1971); *Woods v. Van Wallis Trailer Sales Co., supra; compare Hajoca Corp. v. Brooks*, 249 N.C. 10, 105 S.E.2d 123 (1958).

The Uniform Commercial Code, §§ 55–2–602 and 55–2–609, N.M.S.A.1978, specifies that a buyer, after having given seller notice of rejection of goods within a reasonable time, may not then exercise acts over the property amounting to dominion or ownership, and a buyer who does not have a security interest in such property is under a duty after rejection to hold the goods with reasonable care for a time sufficient to permit the seller to remove them. Continued use of such property, however, will not negate the claim of revocation of acceptance in every case particularly where defendants fail to contact plaintiffs to arrange for removal of such property, or to show how any delay may have prejudiced them, or to show that the delay could have been avoided. *Fablok Mills, Inc. v. Cocker Machine & Foundry Co.*, 125 N.J.Super. 251, 310 A.2d 491 (1973).

Under the facts of the instant case and the findings of the trial court, where defendants refused to take the animal back after plaintiffs demanded rescission, plaintiffs should not be penalized for their apparent good faith efforts to attempt to correct the defects in the animal and to follow defendants' suggestions. *See Can-Key Industries, Inc. v. Industrial Leasing Corp., supra.* The findings of fact and conclusions of law of the trial court challenged by appellants were based upon substantial evidence and supported by appropriate ultimate findings of fact.

Finding no error, we affirm the decision of the trial court.

Defendants shall pay the costs of this appeal.

IT IS SO ORDERED.

WALTERS, C. J., and SUTIN, J., concur.