William SUMNER d/b/a Aviation Alaska, Appellant,

v.

FEL–AIR, INC., Appellee.

No. 5487.

Supreme Court of Alaska.

March 16, 1984.

Frederick W. Ledbetter, Coryell & Ledbetter, Anchorage, and Edgar Paul Boyko, Boyko, Davis & Dennis, Anchorage, and George E. Weiss, George E. Weiss & Associates, Anchorage, for appellant.

Charles K. Cranston, Cranston, Walters & Dahl, Anchorage, Thomas H. Dahl, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal arises from a dispute over the sale of a Piper Navajo airplane by William Sumner, an Anchorage commercial aircraft dealer, to Fel-Air, Inc., a Barrow air taxi operator. In March 1976, Sumner and Fel-Air orally agreed to the basic terms of the sale, including the purchase price of $105,000.00. Sumner was to receive a Piper Aztec aircraft valued at $30,000 as a downpayment on the Navajo. Fel-Air was to remit the $75,000 balance of the purchase price in monthly installments of $2,000. Interest on the unpaid balance was to accrue at a rate of 12%. These terms were confirmed in a March 31, 1976, letter from Fel-Air's general manager to Sumner.

The Navajo was delivered to Fel-Air in April 1976. Sumner received the Aztec as a downpayment in accordance with the parties' agreement. The Navajo began to experience mechanical difficulties and was taken to Seattle Flight Service for repairs in the early summer of 1976. Two months later, after paying a repair bill of $20,000, Fel-Air regained use of the airplane.

Fel-Air sent the Navajo back to Seattle for repairs in October 1976. Two months later, while the plane was still in the custo-

dy of Seattle Flight Service, the president of Century Aircraft, Inc. informed Fel-Air that title to the Navajo was held by Century rather than by Sumner. Century's president had also told Seattle Flight Service that Century owned the aircraft. Sumner's interest in the Navajo was that of a lessee with an option to purchase.[1] After the discovery that Century was the record owner of the Navajo, Seattle Flight Service filed a mechanic's lien against the Navajo for unpaid repair bills.

Fel-Air asserted that it telephoned Sumner in December 1976 and requested either a conditional sales contract or bill of sale which would provide the Federal Aviation Administration with a record of Fel-Air's authority to operate the Navajo, or a full refund of payments made to date on the Navajo, including return of the Aztec. Fel-Air contended that Sumner assured it that the contract would be prepared within three days. Sumner testified that he did not remember such a conversation.

In May of 1977, Fel-Air ceased making monthly payments on the Navajo. On May 10, 1978, Sumner sent a telegram to Fel-Air demanding satisfaction of the lien Seattle Flight Service had filed and payment of monthly installments then due. Fel-Air did not respond. Sumner discharged the $8,000 lien himself and had the plane flown back to Anchorage.

Sumner arranged to have the Navajo's documents of title held in escrow to assure Fel-Air that it would receive title upon payment of the balance of the purchase price and upon compensation of Sumner for payments made to satisfy the Seattle Flight Service lien. On August 3, 1977, the escrow arrangement was completed. The balance then due on the aircraft, including the payment made to discharge the mechanic's lien, was $64,936.47.

Fel-Air subsequently filed suit against Sumner, alleging Sumner had breached implied warranties of merchantability and title and that he was liable to Fel-Air for fraud and misrepresentation. Sumner denied these claims and alleged that Fel-Air had abandoned the Navajo, requested that consideration paid by Fel-Air be deemed an offset for rent owed to Sumner for use of the Navajo, and filed a counterclaim for the $8,000 he had paid to discharge the lien.

The case was tried to the superior court sitting without a jury. The court rejected Fel-Air's claims for breach of the warranty of merchantability and negligent and intentional misrepresentation. However, it concluded that Sumner had breached a warranty of title to the aircraft and awarded Fel-Air $51,166.82 in damages. This sum represented the value of the Aztec used as a downpayment ($30,000), and $21,700 in monthly payments made by Fel-Air to Sumner, less the $533.18 expense of transporting the plane back to Alaska saved by Fel-Air as a result of the breach. Pre-judgment interest accruing at 8% per annum from February 1, 1977, to May 1, 1980, was also awarded, and totaled $13,300.16. Judgment against Sumner was entered for $64,466.98. Fel-Air was also awarded costs and attorney's fees. This appeal followed.[2]

## BREACH OF WARRANTY OF TITLE

Title 45 of the Alaska Statutes adopts Article 2 of the Uniform Commercial Code[3] as the applicable law of sales in Alaska.[4]

1. The lease-purchase agreement between Century and Sumner permitted Sumner to exercise the option to purchase the plane for $85,000 at any time and provided that Sumner would be given full credit against the purchase price for all rental payments made before he exercised the option.

2. Fel-Air did not cross-appeal the superior court's rejection of its claims based on allegations of misrepresentation and a breach of warranty of merchantability.

3. AS 45.01.101 now provides:

 AS 45.01.101—45.09.507 shall be known and may be cited as the Uniform Commercial Code.

4. AS 45.02.101 provides:

Under AS 45.02.312,[5] an implied warranty of title accompanies the sale of goods in Alaska.[6] It may expressly be disclaimed. A focal point of the parties' dispute is whether Sumner excluded or modified by specific language the warranty of title. Sumner does not claim that he had good title to the Navajo, but rather alleges that he informed Fel-Air that he leased, but did not own, the Navajo. Fel-Air denies that it was so informed.

The superior court specifically found that Sumner did not inform Fel-Air prior to the sale that he had neither title to the Navajo nor the right to sell it, and that the circumstances surrounding the transaction did not give Fel-Air any reason to know that Sum-

ner did not claim title to the plane in himself. The court concluded that Sumner had therefore breached the warranty of title imposed by AS 45.02.312.

 Sumner concedes that the superior court's conclusion that there was no express or implied disclaimer of the AS 45.02.312 warranty was a finding of fact which may be reversed only if clearly erroneous. Alaska R.Civ.P. 52(a);[7] *Uchitel Co. v. Telephone Co.*, 646 P.2d 229, 233 (Alaska 1982); *Strack v. Miller*, 645 P.2d 184, 186 (Alaska 1982). In the case at bar, the superior court's factual finding was based upon an assessment of the credibility of conflicting testimonial evidence. We have observed that "[i]t is the trial court's

---

AS 45.02.101—45.02.725 shall be known and may be cited as Uniform Commercial Code—Sales.

5. AS 45.02.312 (U.C.C. § 2–312) provides in relevant part:
 (a) Subject to (b) of this section there is in a contract for sale a warranty by the seller that
 (1) the title conveyed shall be good, and its transfer rightful; and
 (2) the goods shall be delivered free from a security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
 (b) A warranty under (a) of this section will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.

6. We note that, under the Alaska U.C.C., the fact that this transaction involved a conditional sales contract under which Sumner purported to retain title to the Navajo until Fel-Air had paid the purchase price in full has no effect upon Fel-Air's right to sue for breach of a warranty of title. Under AS 45.02.401, Sumner's retention of title was limited in effect to a reservation of a security interest in the Navajo. AS 45.02.401 provides in relevant part:
 Each provision of AS 45.02.101—45.02.725 with regard to the rights, obligations, and remedies of the seller, the buyer, purchasers, or other third parties applies irrespective of title to the goods except where the provision refers to the title. Insofar as situations are not covered by the other provisions of AS 45.02.101—45.02.725 and matters concerning title become material the following rules apply:

 (i) Title to goods cannot pass under a contract for sale before their identification to the contract (AS 45.02.501), and, unless otherwise explicitly agreed, the buyer acquires by their identification a special property as limited by AS 45.01.101—45.09.507 [sic; should be AS 45.09.101—45.09.507]. A retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and the provisions of AS 45.09.101—45.09.507, title to goods passes from the seller to the buyer in the manner and on the conditions explicitly agreed on by the parties.
 (2) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite a reservation of a security interest ....

See *O'Dell v. Kunkel's Inc.*, 581 P.2d 878, 881 (Okla.1978) (devices whereby title is reserved in seller-creditor for a period of time following possession by debtor are treated under U.C.C. as though seller retained only a security interest in goods); *Centurian Corp. v. Cripps*, 624 P.2d 706, 710 (Utah 1981) (risk of loss passes to buyer on delivery even where seller adopts a conditional sale agreement).

7. Civil Rule 52(a) provides, in relevant part:
 Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of [sic] the credibility of witnesses.
A clearly erroneous finding is "one which leaves the supreme court with a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding." *Frontier Saloon, Inc. v. Short*, 557 P.2d 779, 781–82 (Alaska 1976) (per curiam) (footnote omitted).

function, and not that of a reviewing court, to judge the credibility of the witnesses and to weigh conflicting evidence. This is especially true where the trial court's decision depends largely upon oral testimony." *Penn v. Ivey*, 615 P.2d 1, 3 (Alaska 1980) (citations omitted). Thus, particular deference must be accorded to the superior court's finding that Sumner did not dis-·claim the AS 45.02.312 warranty of title. After review of the entire record before us, and guided by these principles of appellate review, we conclude that the superior court's finding that an implied warranty of title accompanied the sale of the Navajo must be upheld. The question now becomes whether or not Sumner breached that warranty.[8]

■ Since Sumner did not have good title to the plane when he purported to convey it to Fel-Air, the answer to this question may seem obvious. Yet both parties agree that Century "entrusted" the plane to Sumner within the meaning of AS 45.02.-403.[9] Under the UCC a merchant to whom goods have been entrusted may give a buyer a better title than the merchant himself possessed. To quote AS 45.02.403(b):

**8.** Sumner argues that Fel-Air should be held to have had "constructive notice" of Century's interest prior to consummation of the sale, since pertinent documents of title to the Navajo were on file at the Federal Aviation Administration (FAA) at that time. This argument is without merit. It is clear from the wording of AS 45.02.-312 that only actual knowledge on the part of the buyer of the seller's lack of title, or of circumstances which would reasonably lead the buyer to reach such a conclusion, can defeat the statutory warranty. The official commentary to § 2–312 of the U.C.C. specifically states that "[t]he 'knowledge' referred to in subsection 1(b) is actual knowledge as distinct from notice." § 2–312 comment 1, 1 U.L.A. 303 (1976).

**9.** UCC § 2–403 is codified at AS 45.02.403, which provides:
(a) A purchaser of goods acquires all title which his transferor had or had power to transfer, except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of

An entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

Because Sumner had possession of the Navajo and was a dealer in airplanes, he had the power to transfer all of Century's rights, including its good title to the airplane. Given the facts as the parties have presented them, Fel-Air could have defeated any attempt by Century to regain possession of the Navajo.

It does not follow from the fact that the parties now agree that Fel-Air's title was good that Sumner did not breach the implied warranty of title. This question has divided the commentators. *Compare* 1 Anderson, Uniform Commercial Code § 2–312:36 (3d ed. 1982) (warranty not breached) with 1 Alderman, A Transactional Guide to the Uniform Commercial Code § 1.53–52 (2d ed. 1983) (warranty breached, seller should have chance to cure). Alderman emphasizes the full text of UCC 2–312(a)(1), which provides:

(a) Subject to (b) of this section there is in a contract for sale a warranty by the seller that

purchase, the purchaser has such power even though
(1) the transferor was deceived as to the identity of the purchaser;
(2) the delivery was in exchange for a check which was later dishonored;
(3) it was agreed that the transaction was to be a "cash sale"; or
(4) the delivery was procured through fraud punishable as larcenous under the criminal law.
(b) An entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
(c) "Entrusting" includes a delivery and an acquiescence in retention of possession regardless of a condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods is larcenous under the criminal law.
(d) The rights of other purchasers of goods and of lien creditors are governed by AS 45.-06.101—45.07.603, 45.07.650 and 45.09.101—45.09.507.

(1) the title conveyed shall be good, *and its transfer rightful.*

AS 45.02.312(a) and (a)(1) (emphasis added). As Alderman states, the entrustee's "wrongfulness (lack of right) in making the conveyance ... is unquestionable, for the transfer of title [is] not made pursuant to any 'right' ". Alderman, *supra*, at 266–67. Here Sumner's lease-purchase arrangement with Century did not authorize him to transfer title to Fel-Air. The transfer he made to Fel-Air was wrongful, and thus we conclude that the warranty UCC 2–312(a)(1) establishes was breached.

*Wright v. Vickaryous*, 611 P.2d 20 (Alaska 1980), supports this conclusion. *Wright* suggests that a court attempting to determine whether or not a warranty of title was breached must consider the facts as they appeared to the buyer at the time title was called into question. If a reasonable buyer would conclude that "marketable title" had not been conveyed to him, the seller—assuming that he does not save the transaction by showing that the facts are not what the buyer believes them to be—has breached the warranty of title. A "substantial shadow" on title is enough to justify the buyer's refusal to proceed with his contractual performance.[10] Similarly in

the instant case the revelation of Century's interest in the Piper Navajo cast such a shadow on the transaction between Sumner and Fel-Air.

To dispel a similar shadow, the buyer in *Wright* would have had to call all the people he believed to be lienholders; had he done so, he would have discovered that their liens had been released. To dispel the shadow of Century Aircraft, Fel-Air would have had to become an expert on the UCC[11] and would then have had to determine that Sumner had not stolen or borrowed the Navajo from Century,[12] that Sumner was indeed a "merchant who deals in [airplanes]" as the UCC defines "merchant," and that Fel-Air itself qualified as a "buyer in ordinary course of business." The parties' present agreement on these matters does not mean that these things were obvious at the time the transaction between Sumner and Fel-Air began to break down. Even if we decided to ignore AS 45.02.312's intimation that a "wrongful" transfer of title breaches the warranty which that section contains, we would be loath to conclude that a breach did not occur in this case. The superior court correctly decided that Sumner breached the implied warranty of title.[13]

**10.** In *Wright* various third parties had taken security interests in the seller's cattle. All of them orally consented to the sale, thus releasing their security interests pursuant to UCC 9–306(2). However, the liens remained on the books, the buyer discovered them, and delivery of the cattle was refused, the seller all this time failing to point out that the security interests had been released. We held that this circumstance put a "substantial shadow" on the title and justified refusing to proceed with the sales contract. *Wright* explicitly recognized that the buyer could successfully have defended himself against any former lienholder's lawsuit, but reasoned that the risk of such a lawsuit was enough to excuse the buyer's refusal to accept delivery.

**11.** Neither party raised the "entrustment" issue in the superior court or in its initial briefing to this court. Both parties addressed the issue in supplemental briefs ordered by this court *sua sponte.*

**12.** AS 45.02.403(c) provides:
"Entrusting" includes a delivery and an acquiescence in retention of possession regardless

of a condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods is larcenous under the criminal law.

If the true owner never acquiesces in a middleman's retention of possession, no "entrustment" has occurred. Certain forms of bailment may also be outside UCC 2–403's scope. *See Sylvester Motor & Tractor Co. v. Farmers Bank of Pelham*, 153 Ga.App. 614, 266 S.E.2d 293 (1980) (buyer returns tractor to dealer who borrowed it for "demonstration" purposes, dealer sells tractor to second buyer). Though we do not necessarily find *Sylvester* persuasive, the issue it raises is serious. The point, of course, is that a buyer cannot blithely assume that the UCC will give it good title to anything it buys from a dealer, and that possible "entrustment" does not eliminate a buyer's fear of lawsuits.

**13.** Because we have thus decided that the warranty was breached, we need not decide whether or not the UCC's "entrustment" provisions are preempted by the Federal law which governs the recording of interests in airplanes. See 49

## REVOCATION OF ACCEPTANCE

We now turn to the question of remedy. The superior court relied primarily upon AS 45.02.609 (U.C.C. § 2–609) [14] and concluded that Fel-Air's oral request in December 1976 for a written conditional sales contract constituted an effective demand for assurance of Sumner's ability to convey good title. The court concluded that Sumner's failure to respond constituted a repudiation of the contract, AS 45.02.609(d), entitling Fel-Air to cancel the contract. AS 45.02.711(a).[15] The court found that Fel-Air did cancel the contract by discontinuing the installment payments and thus conclud-

U.S.C. 1401–06 and *Philko Aviation, Inc. v. Shacket*, — U.S. —, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983) (holding that an unrecorded interest in an airplane may be void as against a subsequent bona fide purchaser). A federal case, *Matter of Gary Aircraft Corp.*, 681 F.2d 365 (5th Cir.1982), has held that the "validity" and priority of properly recorded interests in an aircraft is to be determined according to state law. *Philko Aviation*, which noted that it was "inclined to agree" with *Gary Aircraft*, — U.S. at —, 103 S.Ct. at 2480, 76 L.Ed.2d at 684, held that failure to record may make an otherwise valid interest invalid. In the instant case, Century Aircraft's interest was federally recorded and Fel-Air's was not. Whether or not Fel-Air would have been able to record its interest, and, if so, whether or not UCC 2–403 would have applied in an action between Fel-Air and Century, are complicated questions which we do not find it necessary to address.

**14.** AS 45.02.609 provides in relevant part:

*Right to adequate assurance of performance.*
(a) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. If reasonable grounds for insecurity arise with respect to the performance of either party, the other may in writing demand adequate assurance of due performance and, until he receives this assurance, may, if commercially reasonable, suspend any performance for which he has not already received the agreed return.

. . . . .

(d) After receipt of a justified demand, failure to provide, within a reasonable time not exceeding 30 days, such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

**15.** AS 45.02.711 provides:

ed that Sumner's attempt to retract the repudiation by making arrangements for title to the plane to be placed in escrow was ineffective. AS 45.02.611(a).[16]

■ Sumner challenges the superior court's reliance upon AS 45.02.609 on the ground that the December 1976 demand for assurances was not "in writing." *See* AS 45.02.609(a). We do not reach the merits of Sumner's argument, because we conclude on other grounds that AS 45.02.609 was inapplicable to the case at bar. By its terms, AS 45.02.609 may be invoked only in situations where a party to an executory contract has reason to be concerned about

*Buyer's remedies in general: buyer's security interest in rejected goods.*
(a) If the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance, then, with respect to goods involved and with respect to the whole if the breach goes to the whole contract (AS 45.02.612), the buyer may cancel and, whether or not he has done so, may, in addition to recovering so much of the price as has been paid,
(1) "cover" and have damages under AS 45.-02.712 as to all the goods affected, whether or not they have been identified to the contract; or
(2) recover damages for nondelivery as provided in AS 45.02.713.
(b) If the seller fails to deliver or repudiates, the buyer may also
(1) if the goods have been identified, recover them as provided in AS 45.02.502; or
(2) in a proper case obtain specific performance or replevy the goods as provided in AS 45.02.716.
(c) On rightful rejection or justifiable revocation of acceptance, a buyer has a security interest in goods in his possession or control for payments made on their price and expenses reasonably incurred in their inspection, receipt, transportation, care, and custody and may hold the goods and resell them in like manner as an aggrieved seller (AS 45.02.-706).
AS 45.02.106(d) provides:
"Cancellation" occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of "termination," except that the cancelling party also retains any remedy for breach of the whole contract or an unperformed balance.

**16.** AS 45.02.611(a) provides:
Until the repudiating party's next performance is due he can retract his repudiation unless the aggrieved party has, since the repudiation, cancelled or materially changed his

whether or not another party will tender a performance due in the future.[17] In this case, the time for Sumner's performance (delivery of marketable title to the Navajo) had passed when Fel-Air made its demand. AS 45.02.609 is not relevant in situations where a breach has, in fact, occurred. Thus, the superior court's reliance upon that provision was misplaced.

■ As an alternative ground for its decision, the superior court concluded that Fel-Air had justifiably revoked its acceptance of the Navajo after Sumner failed to provide it with title between December 1976 and April 1977. AS 45.02.711(a) permits a buyer to cancel a contract after properly revoking an acceptance of goods

previously delivered.[18] AS 45.02.608 sets out the prerequisites to an effective revocation.[19] The superior court concluded that these were satisfied.

Sumner contends that the superior court could not properly have found that certain preconditions to an effective revocation of acceptance, set out at AS 45.02.608(b), were fulfilled. Specifically, he argues that the revocation did not occur within a "reasonable time" after the defect was, or should have been, discovered; that a "substantial change in the condition" of the Navajo had taken place before revocation; and that Sumner did not receive adequate notice of the revocation. These are factual determinations,[20] and the superior court's finding

---

position or otherwise indicated that he considers the repudiation final.

17. *See, e.g.,* the official commentary to § 2–609 of the UCC, which provides in part:

The section rests on the recognition of the fact that the essential purpose of a contract between commercial men is actual performance and they do not bargain merely for a promise, or for a promise plus the right to win a lawsuit and that a continuing sense of reliance and security that the promised performance will be forthcoming when due, is an important feature of the bargain. *If either the willingness or the ability of a party to perform declines materially between the time of contracting and the time for performance, the other party is threatened with the loss of a substantial part of what he has bargained for.* UCC § 2–609 comment 1, 1A U.L.A. 312 (1976) (emphasis added).

18. *See* supra note 15.

19. AS 45.02.608 provides:

*Revocation of acceptance in whole or in part.*
(a) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
 (1) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
 (2) without discovery of the nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before a substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
A breach of the AS 45.02.312(a)(1) warranty of title clearly constitutes a "nonconformity" within the meaning of AS 45.02.608(a). Under AS 45.02.106(b), a "nonconformity" arises whenever goods or a seller's conduct are not in accordance with contractual obligations, since that section provides that "[g]oods or conduct including any part of a performance are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." Thus, Sumner's failure to tender good title to the Navajo constituted a breach of an implied contractual obligation, rendering the aircraft a "nonconforming" good. *See Prince v. LeVan,* 486 P.2d 959, 963–66 (Alaska 1971) (revocation of acceptance would have been available upon proper showing that seller had breached express or implied warranties; *see also Gawlick v. American Builders Supply, Inc.,* 86 N.M. 77, 519 P.2d 313, 314 (1974) (breach of warranty of title furnished basis for revocation of acceptance).

20. *See, e.g., Rowe International, Inc. v. J–B Enterprises,* 647 F.2d 830, 833 (8th Cir.1981) (whether notice of breach of warranty was sufficient and given within reasonable time is question of fact); *Colvin v. Superior Equipment Co.,* 96 Ariz. 113, 392 P.2d 778, 782 (1964) (buyer entitled to reasonable time to discover defects violating implied statutory warranty, and what constitutes reasonable time is question of fact); *O'Shea v. Hatch,* 97 N.M. 409, 640 P.2d 515, 521 (1982) (sufficiency of notice of revocation of acceptance and what is considered reasonable time within which to rescind are questions of fact); *Christopher v. Larson Ford Sales,* 557 P.2d 1009, 1012 (Utah 1976) (what constitutes reasonable time for return and request for rescission is usually a question of fact).

that the revocation of acceptance was effective will not be reversed unless clearly erroneous. Civil Rule 52(a).

Sumner's argument that the revocation did not take place within a reasonable time after Fel-Air knew or should have known of defects in the title of the Navajo is predicated upon the proposition that the lack of an FAA registration certificate when the plane was delivered in April 1976 "demonstrates Fel-Air's knowledge of impaired title at the time of acceptance." Sumner alleges that Fel-Air did not attempt to revoke its acceptance until April 1977, and that the year-long delay rendered it untimely.

 We reject Sumner's argument that the revocation was untimely. Sumner correctly points out that the Fel-Air officer in charge of this transaction testified on cross-examination that he had become aware of problems with title to the Navajo shortly after its delivery. It is also correct that Fel-Air continued to make monthly payments on the Navajo through April 1977, almost a year later. However, a seller's assurances that a defect will be cured generally extend the time period within which a revocation of acceptance will be considered "reasonable." [21] Here, the Fel-Air officer testified that Fel-Air continued

to make monthly payments on the Navajo and made extensive repairs on the plane, despite the lack of the bill of sale, because Sumner repeatedly assured it that necessary paperwork would be forthcoming. Thus, even assuming arguendo that the superior court erred in finding that Fel-Air was not aware of the title defect until late 1976, the record demonstrates that any delay in that revocation resulted directly from Sumner's assurances. Therefore, Sumner cannot rely upon such a delay in alleging that the revocation was untimely.[22]

Sumner also contends that filing of the mechanic's lien against the Navajo represented a "substantial change" in the condition of the airplane and therefore that Fel-Air was precluded under AS 45.02.608(b) from revoking its acceptance. This argument is without merit. The official commentary to the U.C.C. explains that an acceptance may not be revoked if "the goods have materially deteriorated ...." U.C.C. § 2–608 comment 6, 1A U.L.A. 287 (1976). The encumbrance did not represent such a "material deterioration," since it could be completely discharged simply upon payment of the amount due Seattle Flight Service. Although it is arguable that Fel-Air rather than Sumner should have borne the burden of discharging the lien,[23] the encumbrance itself did not alter

**21.** *See e.g., Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 48 (7th Cir.1980) (under Indiana law, seller's repeated assurances that problem would be cured will extend time for "reasonable" revocation); *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981) (revocation of acceptance almost one year after delivery of motor home was not untimely where dealer and manufacturer were on notice throughout that time that buyers expected repairs); *Ybarra v. Modern Trailer Sales, Inc.*, 94 N.M. 249, 609 P.2d 331, 332–33 (1980) (four years not unreasonable for revocation of acceptance of mobile home where buyers complained about defects immediately after discovery and relied upon seller's assurances that repairs would be made).

**22.** As we observed *supra* at note 8, under the U.C.C. constructive notice is not a defense to a breach of a warranty of title. Thus, it would be inconsistent to hold that a defect in title which could have been ascertained from a perusal of FAA files was a nonconformity which "should have been discovered" at the time the sale was

consummated for purposes of determining the timeliness of a revocation. We refuse to adopt such an interpretation of AS 45.02.608(b).

**23.** For example, several courts have required a buyer who successfully revoked an acceptance to reimburse the seller for the reasonable value of the use of the goods during the period they were in the buyer's possession. *See Durfee v. Rod Baxter Imports*, 262 N.W.2d 349, 353 n. 4 (Minn.1977). In this case, the cost of repairs might be viewed as representing the rental value of the Navajo. However, the superior court specifically denied Sumner such relief because of an absence of proof regarding the plane's rental value. This finding is not challenged on appeal. The court denied Sumner's $8,000 counterclaim on the ground that he had failed to prove that such an award was necessary to prevent the unjust enrichment of Fel-Air. The court noted that Fel-Air had expended $20,000 for repairs, but that neither party had adduced proof concerning the difference between the fair market value of the plane when it

the condition of the Navajo within the meaning of AS 45.02.608(b).[24]

Finally, Sumner argues that he did not receive adequate notice of the revocation of acceptance. AS 45.02.608 specifically provides that a revocation "is not effective until the buyer notifies the seller of it." [25] The superior court concluded that, in light of Fel-Air's statement to Sumner in December 1976 that it would cancel the contract if the bill of sale was not forthcoming, and the fact that the bill of sale was not delivered between January and April 1977, the discontinuation of monthly payments after April 1977 clearly constituted adequate notice to Sumner that Fel-Air was revoking its acceptance of the Navajo. Sumner argues that the superior court erred in concluding that such an implied revocation satisfied the requirements of AS 45.02.608(b), although he seems to concede that he was aware by May 1977 that Fel-Air wanted to rescind the transaction.

We concur with the superior court's finding that Fel-Air gave adequate notice to Sumner by May of 1977 of the revocation of its acceptance. Notice of a revocation of acceptance under § 2–608 of the U.C.C. need not be in any particular form to be effective; it is sufficient if it informs the seller that the buyer is dissatis-

fied with the goods and does not wish to retain them. *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364, 378 (E.D.Mich.1977); *Cardwell v. International Housing*, 282 Pa.Super. 498, 423 A.2d 355, 361–62 (1980); *Agar v. Kysar*, 628 P.2d 1350, 1353 (Wyo.1981). The notification may be either oral or in writing and is adequate if it informs the seller of the general nature of the difficulty encountered with the warranted goods. *O'Shea v. Hatch*, 97 N.M. 409, 640 P.2d 515, 521 (1982). Thus, the superior court's finding that Fel-Air did not expressly state that it was rescinding the contract does not preclude, as a matter of law, the conclusion that a revocation was made. Since Sumner concedes that he was aware by May 1977 that Fel-Air no longer wished to retain the Navajo, and that the rejection was due at least in part to the difficulties with the title, the superior court's conclusion that the notice of revocation was sufficient must be upheld.[26]

For the foregoing reasons, the judgment of the superior court is AFFIRMED.

---

delivered to Fel-Air and when Sumner regained possession of it. In the absence of proof regarding unjust enrichment of either party, the court left the parties as it found them. This finding is not challenged on appeal. Thus, we decline to address the propriety of the superior court's allocation of the repair payments.

24. *Compare Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364, 381 (D.C. Mich.1977) (use of industrial machine over period approaching its life expectancy constituted substantial change in condition); *Durfee v. Rod Baxter Imports*, 262 N.W.2d 349, 353 n. 4 (Minn. 1977) (broken radio aerial and 6,300 miles logged on automobile did not constitute "substantial changes" in automobile's condition).

25. AS 45.01.201(26) defines notification in the following way:

[A] person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it....

26. In light of our conclusion that Sumner's failure to convey good title to the Navajo did not constitute an anticipatory repudiation, *see* supra pp. 17–18, we do not address the merits of the superior court's conclusion that Sumner's attempt to retract the repudiation and reinstate the contract was ineffective. A party who has repudiated a contract under AS 45.02.609 may retract the repudiation and reinstate the contract provided the other party has not cancelled or otherwise materially changed his position in the interim. AS 45.02.611(a), *supra* note 16. The superior court concluded that Fel-Air's conduct in April and May 1977 constituted a "cancellation" and precluded reinstatement of the contract for sale of the Navajo. On appeal, Sumner challenges the court's conclusion that a cancellation was effected. We do not reach the merits of this argument since the Code does not permit a seller an opportunity to cure once a buyer had revoked an acceptance pursuant to AS 45.02.608. The revocation itself may be considered tantamount to a cancellation of the contract.