DAVID B. HELLER, Plaintiff-Appellee, *v.* TIMOTHY MICHAEL SULLIVAN, Defendant-Appellant.

First District (3rd Division)   No. 77-252

Opinion filed January 25, 1978.

Jerome A. DePalma, of Gentile & DePalma, of Barrington (Richard J. Belmonte, of counsel), for appellant.

David C. Roston, of Chicago (Lieberman, Levy, Baron & Stone, Ltd., of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

At issue is whether the circuit court erred in concluding there was no genuine issue as to any material fact and whether granting the plaintiff summary judgment on the complaint and counterclaim was proper.

Defendant Timothy Sullivan has been a horse trainer and riding instructor for several years. In the spring of 1974 he met Lee Heller, the plaintiff's minor daughter, at a stable where she was riding. He began training a horse she owned and giving her riding lessons. Shortly thereafter, Lee told Sullivan that she was interested in looking for another horse.

In October 1974, Lee and Sullivan went to a farm in Maryland where among the horses for sale she saw one named Suru, which she liked. Sullivan told her that Suru's price was $7,500 and that she should talk to her parents about it.

After Lee returned from Maryland, Sullivan told the plaintiff he considered the horse suitable for Lee. Plaintiff asked Sullivan whether the horse had papers and Sullivan told him that it did. Both the plaintiff and Sullivan understood that, as applied to Suru, "papers" meant the Certificate of Foal Registration issued by the Jockey Club of New York (Certificate). A Certificate identifies a horse by coloring and marking and has a place to enter transfers of ownership.

In November 1974, the plaintiff's wife told Sullivan that her daughter liked Suru and that she and the plaintiff wanted to buy the horse. Sullivan told Mrs. Heller that the horse had papers, it was healthy and its price was $7,500. A short time later, Mrs. Heller gave the defendant a check for $7,500 and the defendant promised to deliver the horse in Chicago. He did so later that month.

When Lee first saw the horse in Chicago she asked Sullivan about the papers and Sullivan told her the previous owner had promised to send them. Sullivan discussed the horse's papers with the plaintiff or his wife on numerous occasions. Sullivan repeatedly responded that he was trying to get the papers and that the former owner, Billy Boyce, had said he would send them.

From the time Suru arrived in Chicago the plaintiff owned and controlled the horse. For approximately the next 9 months Lee enjoyed the use of the horse, rode it and received riding lessons on it from Sullivan. During this time Sullivan trained and cared for the horse and entered it in horse shows, but the plaintiff refused to pay Sullivan for this work and his expenses, despite Sullivan's demands.

The plaintiff's attorney sent Sullivan a letter dated July 31, 1975,

requesting that both a bill of sale from the previous owner and the Certificate be delivered to the plaintiff no later than August 15. In response to that letter Sullivan sent the plaintiff a bill of sale on Sullivan's stationery. At this time, the plaintiff first became aware that Sullivan had purchased the horse himself and then sold it to the plaintiff. The plaintiff returned the bill of sale to Sullivan, informing him it was not satisfactory. Sullivan subsequently sent the bill of sale back to the plaintiff. When the documents which his attorney had requested were not forthcoming, the plaintiff on August 18 sent Sullivan a letter reading in part:

> "On account of your failure to deliver to me the accepted proof of ownership, I hereby revoke my acceptance of the delivery of the chestnut mare Suru. Any further expenses in the maintenance of the horse are your responsibility. The horse is available to be picked up by you upon my receipt of a cashier's or certified check for $7,500 plus the expenses incurred by me in the maintenance and care of the horse. I do not intend hereby to waive any of my rights under the Uniform Commerical Code, including the right to resell the horse."

Sullivan testified in his deposition that he persistently but unsuccessfully had sought to secure the Certificate from Boyce, the previous owner of Suru. According to this testimony, shortly after this action was filed, Sullivan received a Certificate for Suru by mail from Boyce in late August or early September 1975. The Certificate is part of the record.

The complaint in this case, filed on August 25, 1975, alleged the plaintiff revoked the acceptance of the horse on or about August 18, 1975, and sought as damages the purchase price of the horse and the cost of caring for the horse after the plaintiff rejected the acceptance. Sullivan denied the majority of the plaintiff's allegations and counterclaimed for payments for amounts Sullivan claimed were due him for the care and services he provided, and expenses he incurred in connection with, the horse. The plaintiff answered the counterclaim by stating that any care and services Sullivan gave the horse were given at the request of the plaintiff's minor daughter, Lee Heller, and not at the request, or with the agreement, of the plaintiff.

The plaintiff filed a motion for partial summary judgment seeking recovery of the purchase price of Suru, costs for maintaining the horse after August 18, 1975, and dismissal of the defendant's counterclaim. The plaintiff supported his summary judgment motion with the parties' pleadings and depositions. The circuit court entered summary judgment against Sullivan for $7,500, and in favor of the plaintiff on Sullivan's counterclaim.

The plaintiff then filed another motion for summary judgment seeking reimbursement for his expenses in maintaining and showing Suru. This

motion was supported by the plaintiff's affidavit and exhibits. After Sullivan filed an answer to the motion for summary judgment, the circuit court entered a second summary judgment in favor of the plaintiff for an additional $4,946.50. Sullivan appeals from both summary judgments in the plaintiff's favor.

Summary judgment is properly granted when the pleadings, depositions, admissions and affidavits establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. (*Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 141, 355 N.E.2d 1; *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.) If a material question of fact does exist, an order granting summary judgment must be reversed. *Econo Lease*, at 393.

Except for the check for the horse which Mrs. Heller delivered to Sullivan, no part of the transaction between the plaintiff and Sullivan which led to the purchase of the horse was reduced to writing. Therefore, the disposition of the claims in this case must rely upon each party's version of the conversations preceding the purchase of the horse. An examination of these conversations reveals that the plaintiff's complaint raised a material issue of fact as to whether Sullivan, as part of his agreement, promised to provide a Certificate and a bill of sale—a promise which would have made delivery of these documents a material element of the agreement.

The depositions of both the plaintiff and Sullivan reveal that although the two discussed "papers" for the horse, Sullivan made no specific promise to deliver "papers" with the horse. The plaintiff, in fact, acknowledges that Sullivan did not expressly agree to deliver a Certificate and a bill of sale. The evidence shows nothing more about the conversations held prior to the horse's delivery to the plaintiff than that the plaintiff asked Sullivan if the horse was "papered," and that Sullivan replied affirmatively.

■ ■ ■ The plaintiff's brief concedes that in reaching its decision the trial court necessarily inferred that part of the agreement between Mr. Heller and Mr. Sullivan was that Sullivan was to deliver the papers in addition to the horse. This, however, is not the only inference which might be drawn from the conversations between Sullivan and the plaintiff, his wife and daughter during the negotiations for the horse. If the depositions are construed strictly against the plaintiff, as they should be because of his role as the party seeking partial summary judgment (*Hendricks v. Deterts* (1973), 13 Ill. App. 3d 976, 301 N.E.2d 625), these conversations were equally open to the inference that Sullivan represented only that the horse had a Certificate, but did not undertake the obligation of supplying the plaintiff with the Certificate. Therefore,

the plaintiff's partial summary judgment was improperly granted for this reason alone.

In addition, in his appellate brief, the plaintiff argues that Sullivan's statement that the horse "has papers" clearly meant the horse "comes with papers," rather than that the papers were available somewhere for examination. The merit of this argument depends upon the intention of the parties at the time these statements were made, as well as when Sullivan received payment for and delivered the horse. This issue of fact is not resolved by the record before us; based on the testimony of the plaintiff and Sullivan regarding their words and conduct, reasonable persons could arrive at different conclusions regarding the intention of the parties.

If Sullivan promised to deliver a Certificate and a bill of sale, and this promise was a material element of the transaction, a material issue of fact remains as to when Sullivan agreed to deliver these documents. Neither the pleadings nor the evidence establish that Sullivan promised to deliver them by any specific date, and in the absence of such an agreement Sullivan would be given a reasonable time in which to fulfill his obligation. Sullivan offered evidence showing that a Certificate was necessary only if the horse was to be raced, and the depositions of both parties show that Suru was purchased for Lee Heller to use as a show horse rather than as a race horse. In view of the use to which the horse was to be put, a material issue of fact exists as to what need the plaintiff had for a Certificate within the time he gave Sullivan to produce one, and the manner and extent the plaintiff was prejudiced by Sullivan's failure to produce the Certificate until shortly after the August 15, 1975, deadline the plaintiff set at the end of July 1975.

■■ ■ Even if Sullivan did promise to furnish the plaintiff with the documents in question, a third material issue of fact exists as to whether the plaintiff revoked his acceptance of the horse within a reasonable period of time. Section 2—608 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—608) provides that a buyer may revoke acceptance of a commercial unit whose nonconformity substantially impairs its value to him. Sullivan's failure to supply the Certificate, if that was required by his agreement with the plaintiff, would have made the horse nonconforming. (Ill. Rev. Stat. 1975, ch. 26, par. 2—106(2).) However, the Code also provides in section 2—608 that the revocation of an acceptance must occur within a reasonable time. Whether an acceptance is revoked within a reasonable time is a question of fact to be determined by the circumstances of each particular case. *Sauers v. Tibbs* (1977), 48 Ill. App. 3d 805, 811, 363 N.E.2d 444; *Boysen v. Antioch Sheet Metal, Inc.* (1974), 16 Ill. App. 3d 331, 332, 306 N.E.2d 69.

■■ The plaintiff asserts in his brief to this court that by failing to

deliver a Certificate within 3 or 4 months after the delivery of the horse, Sullivan was in default. But the plaintiff treated the horse as his own for 9 months after he accepted delivery. His daughter enjoyed its use, rode it and received lessons on it from Sullivan, and both plaintiff and his daughter entered the horse in shows. Whether, under these circumstances, the plaintiff waived an unreasonably long time to revoke his acceptance, as Sullivan contends, is a material issue of fact disputed by the parties; it should not have been resolved as a matter of law by a summary judgment.

In addition to the material issues of fact disclosed by the plaintiff's complaint, Sullivan's counterclaim for $1,616, on which summary judgment was entered in favor of the plaintiff, also raised material issues of fact.

The plaintiff paid monthly bills totaling $1,856 for the horse's board and physical care from November 1975 until July 1, 1976. To preserve the horse's training as a show horse, the plaintiff entered Suru in shows where trained riders would use her, and he expended $2,708 for this purpose. Among the shows that this expenditure covered were one in Memphis, one in St. Louis and several "Blue Ribbon" shows. The plaintiff contends, though, that he is not responsible for other expenses covered by Sullivan's counterclaim incurred prior to his revocation of the acceptance of the horse. These expenses included entry and vanning fees for horse shows, and training, grooming, medication and shoes for the horse. The plaintiff alleged in his answer to the counterclaim that these items were requested by his daughter, a minor, and that the plaintiff is not obligated to pay them. The plaintiff also contends in this court that his wife told Sullivan to send her the statements for these charges, and that he is not obligated to pay bills which Sullivan sent to Mrs. Heller.

With the exception of a $150 charge for a tack trunk which Lee ordered, all the other charges included in the $1,616 amount for which Sullivan is counterclaiming were for expenses connected with the horse's participation in various horse shows, and for medication and shoes for the horse. Except for Lee's lessons, these expenses fall in the same category as the items for which the plaintiff admits he paid $2,708. Even though the plaintiff may not have specifically authorized each charge included in the counterclaim, it would not have been unreasonable for Sullivan to assume—either correctly or through a misunderstanding or a failure of communications—that after purchasing a $7,500 show horse and providing it for his daughter's use, the plaintiff wanted his daughter to arrange for the horse to be properly cared for and entered in shows. This is made particularly true by the shows in connection with which the plaintiff concedes he incurred expenses. Nor would it have been unreasonable for Sullivan, for any of the same reasons, to believe that the

plaintiff knew that his daughter was incurring expenses for the horse, with her father's authorization, by entering it in shows, by having it shod and given medication, and by taking riding lessons.

■■ Moreover, the plaintiff has filed an affidavit stating that to preserve Suru's value as a show horse, it was necessary to enter the horse in shows where trained riders would use the horse. The plaintiff also stated in his affidavit that Suru's training as a show horse, which added substantially to her value, would be lost if she were not used as a show horse. Most of the charges which Sullivan seeks to recover, and plaintiff contends he is not obligated to pay, actually were incurred to maintain the value of the plaintiff's horse before the plaintiff revoked his acceptance of the horse. Whether the plaintiff knew of these expenditures and did not object to them because they added to the horse's value is a material issue of fact. For all these reasons, entry of summary judgment in favor of the plaintiff on the counterclaim was improper.

The final item on which summary judgment was entered in favor of the plaintiff and against Sullivan was for expenses of $4,946.50, which the plaintiff claimed to have incurred in connection with the horse. This figure includes the $1,856 and $2,708 items referred to above, as well as $382.50 for stabling and boarding the horse during July and August 1975. If the revocation of the acceptance of the horse was not justified, none of these charges would be justly attributable to Sullivan. If, on the other hand, the plaintiff were entitled to revoke the acceptance, and did so within a reasonable time, a material issue of fact would exist as to who was responsible for these expenses until the revocation took place.

■■ This court recently summarized the considerations applicable to summary judgment proceedings in *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 986, 360 N.E.2d 440:

> "Summary judgment proceedings test for the existence of any genuine triable issue of fact. (*Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 291 N.E.2d 202.) However, the right of the movant to summary judgment must be free from doubt, and the affidavit and attachments supporting the motion should be strictly construed and must leave no question as to the movant's right to judgment. Contrarywise, the counteraffidavits should be liberally construed. (*Hendricks v. Deterts* (1973), 13 Ill. App. 3d 976, 301 N.E.2d 625.) Its purpose is not to try an issue of fact and, although inferences may be drawn from undisputed facts, the motion should not be granted unless those facts are susceptible of but a single inference. (*Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276.) Where reasonable men could arrive at different results, questions cannot be determined as a matter of law. *Stanfield.*"

And, in *Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 949, 335 N.E.2d 74, this court observed, "Caution must be exercised in granting summary judgment so as not to preempt the right of a party to present the factual basis of his case to the factfinder."

■■ The record here discloses that reasonable men could have reached different conclusions about matters alleged in both the complaint and the counterclaim. So that the parties can fully present the factual bases of their cases to a trier of fact, both the partial summary judgment and the summary judgment entered in the plaintiff's favor are reversed. This cause is remanded for trial on the complaint and the counterclaim.

Judgments reversed and cause remanded for further proceedings.

JIGANTI, P. J., and McNAMARA, J., concur.