708 P.2d 1039

**ODA NURSERY, INC., a foreign corporation, Plaintiff-Appellant,**

v.

**GARCIA TREE & LAWN, INC., a New Mexico corporation, d/b/a Garcia Garden Center, Defendant-Appellee.**

**No. 15668.**

Supreme Court of New Mexico.

Nov. 1, 1985.

Rehearing Denied Nov. 20, 1985.

Stephen D. Bass, Freeman, Housman & Dinelli, P.A., Albuquerque, for plaintiff-appellant.

Elvin Kanter, Albuquerque, for defendant-appellee.

## OPINION

WALTERS, Justice.

Plaintiff Oda Nursery, Inc. sued defendant Garcia Tree & Lawn, Inc. to recover the purchase price on a contract for the sale of 985 spreading juniper plants. Garcia counterclaimed for breach of contract, alleging that the plants were not of the quality warranted. The trial court found that Oda had provided root-bound plants and that Garcia had effectively rejected them. Judgment was entered against Oda in the amount of $17,783.32, plus interest. Plaintiff appeals, arguing that there was no substantial evidence to support the trial court's findings that the plants were defective nor that Oda breached its warranties of fitness and merchantability. Oda also argues that Garcia's rejection of the plants was ineffective and untimely. We agree with the latter argument, and reverse.

Garcia ordered the plants in early 1982, intending to use them in a beautification project for the City of Albuquerque. On March 13, 1982, Oda's employee Velasco inspected the plants, and within 24 hours they were shipped to Albuquerque. On arrival they were inspected by one of Garcia's employees, and a representative of the city examined them sometime between arrival and the time they were planted. For the four months following delivery the plants remained in their 5-gallon shipping containers. Garcia watered and fertilized them throughout that time. Finally, in July and August 1982, the junipers were planted but, by October, some of them had begun to die. Approximately 350 of the plants were removed at that time, and 350 more were removed in the following months.

One of Garcia's employees testified that she had called Oda soon after the arrival of the plants to complain of their poor condition and that Oda had agreed to send an agent to inspect the plants. Oda, on the other hand, denied that the alleged conversation ever occurred.

On December 8, 1982, Oda filed suit for payment. Garcia answered on February 25, 1983, which, according to Oda, was the first notice it had received regarding any defects in the plants. When an inspection of the dying shrubs was made by Garcia eleven months after the plants had been delivered, he discovered they were root-bound.

## I. Substantial Evidence

Plaintiff objects to certain of the trial court's findings of fact and conclusion of law as not supported by substantial evidence.

We have said repeatedly that the trial court's findings will not be disturbed on appeal if they are supported by the evidence. *Wilson v. Employment Security Commission*, 74 N.M. 3, 389 P.2d 855 (1963). When reviewing for substantial ev-

idence, the appellate court resolves all disputed questions of fact in favor of the successful party and all reasonable inferences are indulged in support of the judgment. *Boone v. Boone*, 90 N.M. 466, 467, 565 P.2d 337, 338 (1977); *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967).

We would agree that some of the trial court's findings are not supported by substantial evidence, and that some are indeed conclusions of law. Our determination of this appeal rests, however, upon the legal issues of revocation and rejection; thus, the challenged findings (most of which really are conclusions) are immaterial to our decision.

## II. Rejection and Revocation

The trial court found and concluded that Garcia had made a timely and effective rejection and revocation of acceptance of the juniper plants. The evidence and other findings do not support that conclusion.

■ The agreement between Oda and Garcia qualifies as a "contract" (NMSA 1978, § 55–1–201) for the sale of "goods" (NMSA 1978, § 55–2–105), and as such is governed by the provisions of the Uniform Commercial Code (NMSA 1978, §§ 55–1–101 to 55–9–507). Even assuming that Oda breached warranties of fitness and merchantability, as the trial court concluded, Section 55–2–602(1) of the UCC provides that:

Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

### (A) Effectiveness

Section 55–1–201(26) of the UCC describes the act of "notification":

[A] person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it.

The trial court found that one of Garcia's employees notified the plaintiff of the "deterioration" of the plants by telephone shortly after the plants arrived. Although later communications between the parties made no mention of such notice, and Garcia made a partial payment for the shrubs two-and-a-half months after receiving the shipment, the trial court was entitled to believe that Garcia telephoned Oda. The telephone call fulfills the requirements of Section 55–1–201.

Nevertheless, when the notice in question regards rejection or revocation of acceptance because of a defect in the goods, the provisions of Sections 55–2–602, 55–2–605 and 55–2–608 must be met as well. Section 55–2–602 requires rejection "within a reasonable time after * * * delivery," and makes any rejection ineffective if the seller is not seasonably notified. Section 55–2–605 provides:

(1) The buyer's failure *to state* in connection with rejection *a particular defect which is ascertainable by reasonable inspection* precludes him from relying on the unstated defect to justify rejection or to establish breach:

(a) where the seller could have cured it if stated seasonably * * * * (Emphasis supplied.)

■ And, under Section 55–2–608, a buyer may revoke acceptance within a reasonable time after he discovers, or should have discovered, grounds for revocation and before any change in the condition of the goods has occurred. The seller must be notified that acceptance is revoked or revocation is ineffective.

According to Garcia's witness, her telephone call was to the effect that the plants did not look "up to snuff."

■ The evidence on notification given by the person who made the notification nowhere describes a "deteriorating" or root-bound condition. Nor is there evidence of notice of either rejection or revocation of acceptance in the telephone conversations or correspondence between the parties. Indeed, partial payment in June, 1982, following the March 1982 delivery,

belies any rejection or revocation based on March or April telephone calls from Garcia to Oda. A check from Garcia for the balance of payment on July 20, 1982, was returned to Oda marked "Insufficient Funds" on August 8, 1982. The letter from Garcia accompanying the check, read:

GENTLEMEN:

ENCLOSED IS OUR CHECK IN THE AMOUNT OF $4,024.90 WHICH IS THE BALANCE DUE ON INVOICE # 14101. WE APPRECIATE YOUR PATIENCE WITH US REGARDING THE LATENESS OF THE PAYMENT. WE SINCERELY HOPE THAT WE CAN DO BUSINESS UNDER MORE FAVORABLE CIRCUMSTANCES. WE FEEL THAT HAD WE NOT BEEN DELAYED WITH THE PAYMENT FROM THE CITY OF ALBUQUERQUE WE COULD HAVE SUCCESSFULLY COMPLETED OUR PAYMENT TO YOU ON TIME. AGAIN, THANK YOU FOR YOUR PATIENCE AND COOPERATION. SHOULD YOU HAVE ANY QUESTIONS, PLEASE ADVISE.

CORDIALLY,

S/

JOSEPH V. GARCIA, ASLA

JVG/ls

Nothing in the July letter indicates dissatisfaction with non-conforming goods or rejection of the contract. A copy from Garcia's records of a memorandum-note to Garcia's bank, dated "12–1–82," and signed by Mrs. Garcia, directed the bank to stop payment on the July 20th check. Mrs. Garcia testified that the December date on the memo was "wrong."

■ There was no evidence produced to show that Garcia had either rejected or revoked acceptance in any acceptable effective manner during the period from delivery in March to payment in July 1982, that would have permitted cure by the seller as contemplated by § 55–2–605.

### (B) Timeliness

The terms "reasonable time" and "seasonably" are defined, for purposes of the UCC, in Section 55–1–204 as follows:

(1) Whenever this act [this chapter] requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement.

(2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.

(3) An action is taken "seasonably" when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.

In the instant case, the parties had no agreement as to a reasonable time for rejection of the plants. Thus, under subsection 3, we must consider the nature, purpose and circumstances of Garcia's purported rejection or revocation.

■ Of course, Garcia must be allowed a certain amount of time within which to inspect the plants. In *Giles v. Phillips*, 238 Miss. 528, 119 So.2d 349 (1960), the Mississippi court held that receipt of goods does not preclude a later rejection of them. "But receipt will become acceptance if the right of revocation is not exercised within a reasonable time." *Id.* 119 So.2d at 351. Although the reasonableness of the time for inspection of the goods is usually a factual matter for the jury's determination, *G & H Land & Cattle Co. v. Heitzman & Nelson, Inc.*, 102 Idaho 204, 628 P.2d 1038 (1981), with regard to a sale of lumber, the Arizona court in *Pace v. Sagebrush Sales Co.*, 114 Ariz. 271, 274, 560 P.2d 789, 792 (1977), held that "as a matter of law, notification four months after acceptance is not a reasonable time within which to notify a seller of defects in goods sold." Considering that the health and quality of the goods in the present case (growing plants) were more dependent on the buyer's awareness of the condition of the goods while in his possession than were the goods in *Pace* (lumber), we believe it eminently reasonable to hold, as a matter of law, that four months or more is not a reasonable time for revocation. Because we have determined that Garcia's telephone call(s) did not

442

constitute effective notice, the first true notice to Oda of claimed defects was in Garcia's answer to Oda's complaint for debt. That document was filed on February 25, 1983, almost a full year after delivery of the plants. Eleven months between receipt and rejection is clearly unreasonable.

Garcia, citing *Sumner v. Fel-Air, Inc.*, 680 P.2d 1109 (Alaska 1984), asks us to adopt a one-year limit as reasonable. But in *Sumner*, the court expressly stated that one year was reasonable only because during that time the seller had made repeated promises to correct the defect. No such promises were made in the instant case. Moreover, the "goods" in *Sumner* was an airplane incapable of change during possession; here the goods were perishable plants. Notice of a root-bound condition in growing plants eleven months after delivery is not seasonable notice.

### (C) Dominion

Section 55–2–602(2)(a) also provides that after inspection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller * * * *

In *O'Shea v. Hatch*, 97 N.M. 409, 413, 640 P.2d 515, 519 (Ct.App.1982), the court held that a "buyer of goods who, after having a reasonable opportunity to inspect them * * * performs acts of dominion or other acts inconsistent with any intention to rescind, may be deemed to have accepted the goods or ratified the sale." *Accord, Livingston Shirt Corp. v. Great Lakes Garment Mfg. Co.*, 351 Mich. 123, 88 N.W.2d 614 (1958). In *Giles*, earlier cited herein, it was said that receipt of goods becomes acceptance "if any act be done by the buyer which he would have no right to do unless he were the owner of the goods." 283 Miss. at 532, 119 So.2d at 351.

Garcia claims to have rejected the plants in the spring of 1982. But in July and August of that year, the company removed the plants from their 5-gallon containers and planted them in fulfillment of its contract with the City of Albuquerque. That act of accepting and planting the delivered goods was clearly inconsistent with rejection or revocation of acceptance.

We reverse the trial court because its findings and conclusions regarding timely rejection or revocation of acceptance are not supported by the evidence. We remand the case for a determination of damages to be awarded to Oda.

IT IS SO ORDERED.

FEDERICI, C.J., and STOWERS, J., concur.