Jeffrey R. CHERNICK, d/b/a Chancellor Farm, Appellant,

v.

Blas CASARES, Appellee.

No. 87–CA–2135–MR.

Court of Appeals of Kentucky.

Nov. 18, 1988.

Stephen M. O'Brien, III, Angela M. Ford, Landrum, Shouse & Patterson, Lexington, for appellant.

Charles G. Wylie, Walter R. Morris, Jr., Gess Mattingly Saunier & Atchison, Lexington, for appellee.

Before HOWARD, McDONALD and WILHOIT, JJ.

McDONALD, Judge:

In 1981 the appellant, Jeffrey Chernick, purchased the thoroughbred brood mare Fiddler's Colleen from the appellee, Blas Casares. The mare was in foal at the time but later "slipped" (spontaneously aborted) twins. She was bred again in 1982 and, once again, slipped the foal. Chernick then sold her to Cloverfield Farm, Inc., without mentioning either her latest slip nor the fact that her previous slip had been twins.[1] Upon discovering that the mare was not in sound breeding condition due to infection, Cloverfield demanded that Chernick accept return of the horse. Chernick refused, instead suing the consignor for the purchase price. Cloverfield intervened, demanding rescission of the sale and a return of the purchase price.

The Fayette Circuit Court, sitting without a jury, found that Chernick had deliberately misrepresented the mare's condition. He was ordered to accept return of the mare and to pay punitive and compensatory damages. The judgment was affirmed by this Court in *Chernick v. Fasig–Tipton Kentucky, Inc.*, Ky.App., 703 S.W.2d 885 (1986).

Chernick accepted the return of Fiddler's Colleen in April, 1984. He immediately began trying to breed her again although he knew at the time that she had a "double follicle," that is, that she was about to release two eggs at once and might conceive twins. In November of that year, Chernick informed Casares's agent that he intended to revoke his acceptance of the mare because of an error that appeared in the Keeneland Catalogue at the time he purchased her and which came to light

---

1. Apparently a mare's tendency to bear twins greatly reduces her value as a broodmare.

during the Cloverfield litigation. This error was a listing, under her Produce Record, that in 1980 she was "not bred," whereas in fact she was bred but did not conceive, so that the entry should have read "barren." Chernick filed suit against Casares in 1985; in 1986 he amended his complaint to allege that at the time of sale Casares knew or should have known that the mare was carrying twins.[2]

The action proceeded to trial in 1987. At the close of the plaintiff's evidence Casares, the defendant below, moved for a directed verdict. The court granted the motion, holding that Chernick's notice of intent to revoke his acceptance was untimely as a matter of law; and further that his attempt to breed Fiddler's Colleen in 1984 constituted an act of dominion over the mare which precluded him from later revoking his acceptance of her.

Although the parties object to each other's characterization of certain facts, the facts themselves are not in dispute. Where the facts are undisputed, "the clear conclusion is a matter of law, one way or the other," and a directed verdict is proper. *Lee v. Tucker*, Ky., 365 S.W.2d 849, 851 (1963). We agree with the trial court's conclusions, and we affirm.

Kentucky Revised Statute 355.2–608 reads:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
> .    .    .    .    .
>
> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is

not effective until the buyer notifies the seller of it.

Although what is a "reasonable time" under this section of the Uniform Commercial Code is a matter of first impression for us, we have no difficulty in deciding this in accordance with the law of our sister states, and with Kentucky law which predates the adoption of the Uniform Commercial Code.

KRS 355.1–204(2) states that "[w]hat is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." The appellant argues that whether he notified Casares of his intent to revoke his acceptance "within a reasonable time" was a question of fact which should have been submitted to the jury. We agree that this is, ordinarily, a fact issue. D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 2.5(C)(4)(b) at 151 (1983); *Heller v. Sullivan*, 57 Ill.App.3d 190, 14 Ill.Dec. 757, 372 N.E.2d 1036 (1978). However, we disagree with appellant's contention that the facts "may never be so overwhelming as to render the timeliness question a matter of law." Indeed, inasmuch as this argument contradicts both common sense and the weight of authority, it appears almost frivolous. There are simply situations in which a buyer has delayed so excessively that his actions become untimely as a matter of law. *Oda Nursery, Inc. v. Garcia Tree & Lawn, Inc.*, 103 N.M. 438, 708 P.2d 1039 (1985); *Meat Requirements Coordination, Inc. v. GGO, Inc.*, 673 F.2d 229 (8th Cir.1982); *Gilbert v. Caffee*, 293 N.W. 2d 893 (S.D.1980); *Pace v. Sagebrush Sales Co.*, 114 Ariz. 271, 560 P.2d 789 (1977); *Peter Pan Seafoods, Inc. v. Olympic Foundry Co.*, 17 Wash.App. 761, 565 P.2d 819 (1977); *Hays Merchandising, Inc. v. Dewey*, 78 Wash.2d 343, 474 P.2d 270 (1970). Kentucky cases decided prior to the adoption of the Uniform Commercial Code and dealing with rescission are in accord. *Chaplin v. Bessire & Co.*, Ky., 361 S.W.2d 293 (1962); *Gargotto v. Sherman*, 297 Ky. 597, 180 S.W.2d 565 (1944); *A.C.*

---

**2.** During the course of discovery, Casares's agent stated that the mare had been bred on a double follicle in 1981. The Produce Record said merely, "Believed to be in foal."

*Morris & Co. v. Heaton*, 235 Ky. 66, 29 S.W.2d 617 (1930).

■ We think that, under the facts of this case, three years between the purchase of the mare and the attempted revocation of her was clearly unreasonable. A thoroughbred horse, particularly a broodmare, has a limited useful life. Its value depreciates rapidly. One of the purposes behind the "reasonable time" requirement is to limit prejudice to the seller which results from natural deterioration of the goods over time. *Chaplin, supra* at 298. Thus, the type of goods involved may be dispositive of what constitutes a reasonable time in which to revoke acceptance; perishable or seasonal goods demand prompter action than, for instance, a long-term fixture. *Chaplin, supra* at 297–98; *see also* D. Leibson and R. Nowka, *supra* at 152; J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* (2d Ed.1980) at 311.

■ Appellant argues that we should essentially toll the running of time until April of 1984, when he was forced to accept the return of Fiddler's Colleen; this would shorten the pertinent time frame to only seven months. Alternatively, he points to the date in 1986 when appellee's trainer revealed that the mare had been bred on a double follicle in 1981. We are unpersuaded by these arguments. Appellant was put on notice of the possibility of a defect in the mare in February of 1982—three months after he purchased her and while she was still in his possession—when she slipped twin foals. He had ample opportunity to investigate her produce record. Although a buyer is entitled to rely on a seller's assurances, *Keck v. Wacker*, 413 F.Supp. 1377 (E.D.Ky.1976); *Chernick v. Fasig–Tipton, supra* at 890, once put on notice he should not be allowed to wait indefinitely for a defect to materialize before revoking acceptance. Rather he has a duty to "conduct [his] own inspection within a reasonable time to discover defects in the product and to revoke acceptance be-

fore a substantial change in the condition of the goods occurs." *Meat Requirements, supra* at 231.

■■ Appellant also disputes the trial court's conclusion that his attempt to breed Fiddler's Colleen in 1984 was an act of dominion which precluded revocation. He apparently concedes that this was, in fact, an act of dominion but maintains that it was not "inconsistent with, or contrary to, appellee's ownership interest." Appellant misses the point. A buyer's actions do not necessarily have to be detrimental to the seller's interest to preclude revocation, only inconsistent with any intention to revoke. A "buyer of goods who, after having a reasonable opportunity to inspect them ... performs acts of dominion or other acts inconsistent with any intention to rescind, may be deemed to have accepted the goods or ratified the sale." *Oda Nursery*, 708 P.2d at 1043, citing *O'Shea v. Hatch*, App., 97 N.M. 409, 640 P.2d 515, 519 (1982). *See also Hays Merchandise*, 474 P.2d at 273; *Ingle v. Marked Tree Equipment Co.*, 244 Ark. 1166, 428 S.W.2d 286 (1968); *Gargotto*, 180 S.W.2d at 566; *Wagner v. Guy*, Ky., 252 S.W.2d 420 (1952). As appellee points out, breeding a thoroughbred mare is "an extremely delicate and risky business," involving decisions about "which stallion to use, which veterinarian to employ, and when the breeding should occur." We think appellant's exclusive exercise of these rights of ownership supports the circuit court's determination.

In sum, we conclude that the trial court acted properly when it directed a verdict for the defendant/appellee. "The Uniform Commercial Code imposes a duty of good faith upon all its transactions [KRS 355.1–203]; a delay ... by the buyer in informing the seller of his intended revocation is insufficient compliance with the good faith obligation." *Peter Pan Seafoods*, 565 P.2d at 825. It appears that Mr. Chernick, having made a bad bargain on Fiddler's Col-

leen, is trying to cover his losses by throwing her back at his seller. Whatever her defects, "by unreasonable delay the purchaser affirms the sale and loses his right of rescission.... He will not be permitted to speculate as to the result of the trade and then rescind after it proves to be unprofitable." *Gargotto,* 180 S.W.2d at 566.

The judgment of the Fayette Circuit Court is affirmed.

All concur.