# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SUPERIOR SCREEN AND GLASS, INC., )
　)
Appellant, )
　) C.A. No. S25A-01-002 CAK
　v. )
　)
　)
WALTER CAHILL and JEANNE VANDERSAL, )
　)
Appellees. )

Submitted: September 17, 2025
Decided: October 27, 2025

*Upon Appeal from the Court of Common Pleas*

**REVERSED**

## MEMORANDUM OPINION AND ORDER

Dean A Campbell, Esquire, Law Offices of Dean A. Campbell, PA, 703 Chestnut Street, Milton, DE 19968, Attorney for Appellant.

Michael I. Silverman, Esquire, Silverman McDonald and Friedman, LLC, 1523 Concord Pike, Suite 400, Wilmington, DE 19803, Attorney for Appellees.

**KARSNITZ, R. J.**

## I.    FACTS

Superior Screen and Glass, Inc. ("Appellant" or "Superior Glass"), a Delaware corporation, is located in Ocean View, Delaware and is owned by Joel Antonioli ("Antonioli"). Walter Cahill and Jeane Vandersal ("Appellees") are residents of Bethany Beach, Delaware.  In the summer of 2019, Appellees entered into a contract (the "Contract") with Appellant for the purchase and installation of four special-order sliding-glass doors, which included screen doors, manufactured by Pella Corporation ("Pella"), for a total price of $14,300.00 ("The Contract").[1] Appellant ordered and purchased doors from Home Depot, which were then installed into Appellees' home.[2] Appellant emailed Appellees on December 13, 2019, notifying them that the installation was complete, and on December 17, 2019, Appellees emailed Appellant expressing their satisfaction with the installation and appearance of the doors.[3] The home was occupied, and the doors were used by Appellees throughout the year, and the record reflects that the first documented complaint of issues with the doors was on December 6, 2020.[4]

On that date, Appellees emailed Appellant to report issues with each of the

---

[1] Appellant's App. at A00001-A00003.
[2] Appellant's App. at A00009-A000011.
[3] Appellant's App. at A00004.
[4] Appellant's App. at A00005; Ct. of Common Pleas Trial Tr., at 52-53 (Jan. 13, 2025).

screen doors installed with the sliding-glass doors, including gaps in lining and loose closing.[5] Appellant replied that the issues described were considered manufacturer warranty concerns and advised that the Appellees' information had been passed along to a Pella representative.[6] Sometime between December 6, 2020 and January 27, 2021, a Pella representative was sent to Appellees' home to inspect the doors and it was determined they were in fact not Pella brand doors.[7] Upon learning this, Antonioli visited Appellees' home again to inspect the doors himself sometime after January 27, 2021.[8] During this visit, Appellees demanded that the old doors which were removed in 2019 be returned and reinstalled, but this was impossible since Appellant had recycled the old doors as part of its regular business practice.[9] Although Antonioli identified what he described as easy fixes for Appellees' issues with the screen doors, he left the property without making repairs when communication between the parties broke down.[10]

## II.   JUSTICE OF THE PEACE COURT LITIGATION

Appellees brought a claim for breach of contract in the Justice of the Peace Court seeking damages in the amount of the total contract price, $14,300.00, arising

---

[5] Appellant's App. at A00005.
[6] Appellant's App. at A00007.
[7] Ct. of Common Pleas Trial Tr., at 96 (Jan. 13, 2025).
[8] *Id.*
[9] *Id.* at 99.
[10] *Id.* at 98.

from the installation of doors which did not conform to those specified in the Contract. On October 25, 2021, the Justice of the Peace Court entered a judgment in favor of Appellees in the amount of $14,000.00.[11] In its opinion, the Justice of the Peace Court stated as follows:

> If [Appellees] had received sliding glass doors comparable to Pella products which were not defective, the Court may entertain the suggestion that they received a benefit of the bargain.[12]

## III. COURT OF COMMON PLEAS LITIGATION

On October 26, 2021, Appellant filed an appeal of the Justice of the Peace Court decision with the Court of Common Pleas. A Court of Common Pleas trial was held on January 13, 2025, under the *de novo* standard of review.[13] During trial, the Court confirmed the following stipulations:

> The Court: Okay. So we both agree that there was a contract. We're all on the same page. I don't know whether you guys are willing to say it's a stipulation or not, but –
> Mr. Silverman: That's what I'm looking to hear.
> The Court: Right.
> Mr. Campbell: Uh-huh.
> The Court: So do we recognize that Andersen doors were installed when the contract called for Pella doors? Is that something you're willing to stipulate to?
> Mr. Campbell: Yes.
> The Court: Okay, so those two issues, I think, are covered.

---

[11] Appellees' Ex. A – Justice of the Peace Ct. Order, at 4.
[12] *Id.* at 3.
[13] Appellant's Ex. A – Ct. of Common Pleas Order, at 1.

> Mr. Silverman: Okay.
> The Court: The other issue, I don't think we have any stipulation or agreement on and that is whether or not that's acceptable.
> Mr. Silverman: Right.[14]

Despite this stipulation at the onset of the trial, there was a great deal of discussion surrounding the brand of door installed in Appellees' home. Superior Glass employee Michael Santora ("Santora") and owner Antonioli were called to testify during trial. On direct examination of Santora, when questioned regarding brands of doors Appellant regularly installs, he testified as follows:

> Mr. Santora: We install a few different products; mainly Pella, Andersen. They're the two main when it comes to doors, as they're the two main ones that we would go with generally. [15]

When questioned regarding which brand of doors were installed by Appellant in Appellees' home, Antonioli testified as follows:

> Mr. Campbell: Mr. Antonioli, you went to Mr. Cahill's home eventually to look at these doors, correct?
> Mr. Antonioli: Correct.
> Mr. Campbell: And did you make a determination which doors had been installed, Andersen or [Pella]?
> Antonioli: I identified them because that was the issue, those were not Pella doors.
> Campbell: But did you identify them as being either Andersen or [Pella]?

---

[14] Ct. of Common Pleas Trial Tr., at 14 (Jan. 13, 2025).
[15] *Id.* at 109.

5

Antonioli: No, I didn't. [16]

Trial concluded on January 13, 2025, and the Court of Common Pleas ruled in favor of Appellees by affirming the Justice of the Peace Court's award of damages.[17] In its Opinion, the Court stated as follows:

> Here, [Appellees] and [Appellant] primarily contracted for the sale of four [doors]. The four [doors] fall under the definition of "goods" because they were moveable to [Appellees'] home at the time the parties contracted for their sale. As [doors] are goods, the UCC adopted into Delaware law applies.[18]
>
> ***
>
> While applying the UCC, this Court must assess whether [Appellant] performed perfect tender when it sold and installed the four [doors] and whether it breached the warranty of merchantability when it installed malfunctioning [doors].[19]
>
> ***
>
> [Appellees] must prove by a preponderance of the evidence that (1) the parties formed a contract, (2) [Appellant] breached the contract, and (3) [Appellees] suffered monetary damages because of [Appellant's] breach.[20]
>
> ***
>
> Regarding the second element, the UCC measures it by

---

[16] *Id.* at 86-87.
[17] Appellant's Ex. A. – Ct. of Common Pleas Order, at 6.
[18] *Id*. at 3.
[19] *Id.*
[20] *Id.*

perfect tender. If a seller does not perfectly tender conforming goods, the seller therefore breaches the contract, and the buyer may reject the goods in whole, accept the goods in whole, or accept any commercial unit and reject the rest. *Further, if a buyer accepts the goods, they may later revoke acceptance of such goods only if the nonconformity substantially impairs the value of the goods and the defect was difficult to discover*, or acceptance was originally induced by the seller's assurances.[21] [Emphasis supplied]

\*\*\*

Here, [Appellant] did not perfectly tender conforming goods … [Appellant's] failure to install such product constitutes a breach. [Appellant] argued that [Appellees] nevertheless accepted the goods when they paid for them. [Appellant's] argument fails because malfunctioning of the [doors] only occurred following repeated use of the doors, thereby discovery of the defect was difficult following initial installation.[22]

To summarize, despite confirming the stipulation discussed above that the doors were Andersen brand rather than the Pella brand contracted for, the Court stated that the brand of doors installed in Appellees' home was unidentified.[23] The Court also determined that the doors were goods, and therefore the Uniform Commercial Code ("UCC") for the sale of goods applied.[24]

In its analysis under the UCC of the breach of contract claim, the Court found

---

[21] *Id.* at 4.
[22] *Id.* at 5.
[23] *Id.* at 1.
[24] *Id.* at 3.

that the Contract was formed; the parties did not dispute the existence of a contract.[25] Next the Court found that Appellant breached the Contract by failing to perfectly tender the goods when it installed nonconforming goods. The Court rejected Appellant's argument that Appellees accepted the nonconforming goods when they paid for them; indeed, it acknowledged that it was difficult to discover the nonconformity of the doors at the time of acceptance and payment.[26] Yet the Court curiously stopped there, and did not go on to discuss Appellees' revocation of acceptance after discovery of the nonconformity.

The record also reflects that the Court's conclusion that Appellant breached the implied warranty of merchantability was based on the finding that Appellant improperly installed nonconforming doors.[27]

The Court concluded its breach of contract analysis by finding Appellees suffered damages by not receiving the benefit of their bargain by Appellant's improperly installing nonconforming doors.[28]

The Court ruled in favor of Appellees from the bench and issued an Order awarding Appellees the full Contract price, along with post-judgment interest of

---

[25] Ct. of Common Pleas Trial Tr., at 14 (Jan. 13, 2025).
[26] *Id.* at 3-5.
[27] *Id.* at 5.
[28] *Id.* at 5-6.

9.5%.

## IV.   PARTIES' CLAIMS

On January 28, 2025, Appellant filed notice of appeal of the Court of Common Pleas ruling with this Court. Appellant filed an Opening Brief on June 20, 2025, raising three (3) arguments:

(1)   The Court of Common Pleas erred in applying the "Perfect Tender Rule" in its analysis rather than Delaware's revocation of acceptance statute, because the facts establish that acceptance of the goods had occurred but was later revoked when the goods were discovered to be nonconforming.

(2) The Court of Common Pleas erred in finding a breach of the implied warranty of merchantability, because insufficient evidence was presented, and an incomplete analysis was conducted.

(3) The Court of Common Pleas erred in its award of damages in the amount of the full contract price to Appellees, because this award exceeded expectation damages and have placed Appellees in a better position than they would have been in had no breach occurred.

On July 15, 2025, Appellees filed their Answering Brief. They only addressed Appellant's Perfect Tender Rule argument and made no arguments about the implied warranty of merchantability or damages.

On July 21, 2025, Appellant filed its Reply Brief. It again emphasized its arguments that the trial Court erred in applying the Perfect Tender Rule and in not properly analyzing the breach of implied warranty of merchantability claim. It also highlighted Appellees' failure to address the argument regarding damages.

On September 17, 2025, I heard oral argument from Appellant and Appellees. I took the matter under advisement. This is my ruling.

## V.   **LEGAL STANDARD**

The role of this Court when hearing cases on appeal is to address and correct errors of law and fact by the lower court by determining if they are supported by the record.[29] As to factual issues, this Court must accept the Court of Common Pleas' findings of fact when they are sufficiently supported by the record and are the product of an orderly and logical deductive process.[30] As to legal issues, the Court applies a *de novo* standard of review.[31] Under such a review, legal issues are reviewed as if they were before the Court for the first time, without being bound by the rulings of the lower court.

In my view, the issues before me are all legal issues and thus call for a *de novo*

---

[29] *DiSabatino v. State*, 808 A.2d 1216, 1220 (Del. Super. 2002) (citing *Steelman v. State*, 2000 WL 972663 (Del. Super. Ct. May 30, 2000).
[30] *State v. Cagle*, 332 A.2d 140, 142 (Del. 1974).
[31] *Humm v. Aetna Cas. and Sur. Co.,* 656 A.2d 712, 712 (Del. 1995).

review. This matter is a dispute as to which rule of law (Perfect Tender Rule or revocation of acceptance) applies to Appellees' breach of contract claim, the record support for a breach of the implied warranty of merchantability, and the measure of damages.

## VI.   ANALYSIS

The parties disagree on Delaware law with respect to breaches of contract for the sale of goods where the goods have been accepted and then acceptance has been revoked due to nonconformity.  First, Appellant argues that when there is clear evidence of acceptance, the "Perfect Tender Rule" does not apply and instead Delaware's revocation of acceptance statute[32] governs. Second, Appellant argues that findings of breach of the implied warranty of merchantability must be supported by sufficient evidence and expert testimony. Third, Appellant argues that damages for breach of contract may not exceed expectation damages by placing parties in a better position than they would have been in had the breach never occurred. As discussed more fully below, I find that the revocation of acceptance statute governs, that the lower Court's finding of breach of the implied warranty of merchantability was not supported by a complete analysis or expert testimony, and that damages

---

[32] 6 *Del. C.* § 2-608.

11

awarded to Appellees exceed expectation damages.

## A. The "Perfect Tender Rule" and Revocation of Acceptance

Delaware has codified the "Perfect Tender Rule," which provides that, when goods or delivery of goods fails to conform to a contract's specifications, buyers can reject the goods, accept the goods, or accept a commercial unit or units and reject the rest.[33] Under Delaware law, acceptance of goods may occur in several ways, including when buyers have reasonable opportunity to inspect the goods and signify to sellers that the goods are conforming.[34] The Perfect Tender Rule addresses acceptance and rejection of goods, but is silent regarding revocation of acceptance.

Revocation of acceptance is permitted for nonconforming goods whose value to the buyer is substantially impaired when either: (a) the goods were accepted by the buyer with a reasonable assumption that their nonconformity would be cured, or (b) if discovery of the nonconformity was difficult prior to acceptance.[35] Such revocations must occur within a reasonable time after a buyer discovers, or should have discovered, grounds for revocation.[36] Whether notice of revocation is considered to

---

[33] 6 *Del. C.* § 2-601.
[34] 6 *Del. C.* § 2-606(1)(a).
[35] 6 *Del. C.* § 2-608.
[36] *Id.*; *Staging Dimensions, Inc. v. KP Walsh Assoc., Inc.*, 2020 WL 1428120, at *6 (Del. C.C.P. Mar. 19, 2020).

have occurred within a reasonable time is generally a factual finding.[37]

Delaware's codified Perfect Tender Rule provides:

> …[I]f the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may:
>     (a) reject the whole; or
>     (b) accept the whole; or
>     (c) accept any commercial units or unit and reject the rest.[38]

Yet, despite a clear showing on the record that Appellees accepted the goods by email and that discovery of the nonconformity did not occur until approximately a year later, the Court of Common Pleas relied primarily on the Perfect Tender Rule in analysis of this breach.[39] In its Order, the Court of Common Pleas stated:

> [Appellant] argued that [Appellees] nevertheless accepted the goods when they paid for them. [Appellant's] argument fails because malfunction of the [doors] only occurred following repeated use of the doors thereby the discovery of the defect was difficult following initial installation.[40]

In my view, this analysis by the lower Court conflates the Perfect Tender Rule with revocation of acceptance. Revocation of acceptance is defined under Delaware

---

[37] *Mercedez Benz of North America v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1363 (Del. 1991) (citing *Chernick v. Casares*, Ky. App., 759 S.W.2d 832, 834 (1998); *Vista Chevrolet, Inc. v. Lewis,* 704 S.W.2d 363, 368 (Tex. App. 1985), aff'd in part, rev'd in part on other grounds, 709 S.W.2d 176 (Tex. Supr. 1986); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144, 148 (Conn. Supr. 1976)).
[38] 6 *Del. C.* § 2-601.
[39] Appellant's App. at A00004.
[40] Appellant's Ex. A. – Ct. of Common Pleas Order, at 5.

law as follows:

> (1) The buyer may revoke his or her acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him or her if he or she has accepted it
>> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>> (b) *without discovery of such nonconformity if his or her acceptance was reasonably induced either by the difficulty of discovery before acceptance* or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the grounds for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
> (3) A buyer who so revokes has the same rights and duties regarding the goods involved as if he or she had rejected them.[41] [Emphasis supplied]

Although the lower Court's Order discusses the substantial impairment of value element from Delaware's revocation of acceptance statute, there is no consideration of *how* the nonconformity of the doors, Andersen instead of Pella, substantially impaired their value.[42] There is insufficient evidence on the record that Appellees established the necessary elements of revocation of acceptance.

Even had the lower Court conducted a full revocation of acceptance analysis, Appellees exercised wrongful ownership of the installed doors. Appellees kept the

---

[41] 6 *Del. C.* § 2-608.
[42] Appellant's Ex. A. – Ct. of Common Pleas Order, at 4.

nonconforming doors in their home and kept using them.[43] Buyers who revoke acceptance have no more rights to the goods than someone who has rejected them.[44] A buyer's exercise of ownership over rejected goods is wrongful against the seller.[45]

Accordingly, I find that the Court of Common Pleas erred in analyzing these facts under a Perfect Tender Rule analysis rather than a revocation of acceptance analysis.

### B. Implied Warranty of Merchantability

The lower Court did not conduct a complete analysis of Appellees' breach of warranty of merchantability claim. Under Delaware law, a seller is considered a "merchant" if it deals in goods of the kind or if their occupation provides special knowledge or skill related to the goods involved in a transaction.[46] Delaware's Implied Warranty of Merchantability statute provides, in part, that goods sold by a merchant who regularly deals in goods of that kind must be fit for their ordinary purpose of use.[47] Delaware case law sets forth the elements necessary for claims of breach of the implied warranty of merchantability: (1) a merchant must be the seller of the goods; (2) the goods in question must have been defective at the time of sale;

---

[43] Ct. of Common Pleas Trial Tr., at 41 (Jan. 13, 2025).
[44] 6 *Del. C.* § 2-608(3).
[45] 6 *Del. C.* § 2-602(2)(a).
[46] 6 *Del. C.* § 2-104.
[47] 6 *Del. C.* § 2-314(2)(c).

(3) the defective goods must have caused injury to the buyer; (4) the proximate cause of the buyer's injury must be the defective nature of the goods; and (5) the seller/merchant must have had notice of the injury.[48] In addition, the Delaware Supreme Court has held that expert testimony is generally required in order to prove causation in breach of warranty of merchantability claims.[49]

The Order from the Court of Common Pleas expressly stated that "[Appellant] breached the implied warrant[y] of merchantability when it installed the four unknown brand of screen doors because the doors did not properly close, and they had significant gaps between the frame and the doors."[50]  This is not a sufficient analysis to support a finding of such a breach.[51] While the lower Court accurately concluded that Appellant is a merchant of the doors in question, the other elements were not established by evidence of record.[52]

The record details that the defects did not exist at the time of sale and the malfunctions did not occur until the doors were repeatedly used, yet the lower Court nonetheless made a factual finding of defects.[53] The defects were not noted in Appellees' December 17, 2019 email to Appellant, which stated "The doors look

---

[48] *Reybold Group, Inc., v. Chemprobe Technologies, Inc.*, 721 A.2d 1267, 1269 (Del. 1998).
[49] *Id.* at 1270.
[50] Appellant's Ex. A – Ct. of Common Pleas Order, at 5.
[51] *Reybold Group, Inc.*, at 1269.
[52] Appellant's Ex. A – Ct. of Common Pleas Order, at 5.
[53] *Id.*

great!"[54] The lower Court Order also found that Appellees first complained of defects approximately half a year after the date of sale, and the first documented complaint in the record is dated December 6, 2020.[55] The analysis appears to end there, with no consideration of how the nonconformity of the doors proximately caused the gap and closing issues and no expert testimony establishing such a link as required under Delaware law.[56]

The established facts do not support the finding of breach of the implied warranty of merchantability. Accordingly, I find that the Court of Common Pleas erred in its finding of breach of the implied warranty of merchantability due to insufficient analysis to support findings of the essential elements under Delaware Law.

### C. Damages

When a buyer accepts goods and later gives notice of breach to the seller, the buyer "may recover damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."[57] Breach of warranty damages are measured as the difference

---

[54] Appellant's App., at A00004.
[55] Appellant's Ex. A – Ct. of Common Pleas Order, at 2.; Appellant's App. at A00005.
[56] *Reybold Group, Inc.*, at 1270.
[57] 6 *Del. C.* § 2-714(1).

between the value of the goods at the time and place of acceptance and the value of the goods if there had been no breach.[58] Delaware case law holds that damages for breach of contract claims cannot exceed expectation damages, meaning they must be limited to an amount that places the recovering party in the position it would have been in had the breach not occurred.[59]

The Court of Common Pleas' award of the full contract price here exceeds Appellees' expectation damages. Appellees assert their breach of contract claim in the amount of the full price of the transaction, $14,300.00. Appellees contracted for Pella doors and the record shows a stipulation that they received Andersen doors.[60] Thus, Appellees are entitled to recover their loss resulting from the nonconforming doors, i.e., the proper measure of damages here is the value of the Pella doors the Appellees contracted for less the value of the Andersen doors they received, plus consequential damages.[61]

Appellees have offered no evidence of loss, yet they have been awarded a judgment of the full contract price while keeping and continuing to use the nonconforming Andersen doors for years. Accordingly, I find the Court of Common

[58] 6 *Del. C.* § 2-714(2). The measure of damages may be altered in some circumstances where proximate damages differ from the above formula. *Id.*
[59] *Crispo v. Musk*, 304 A.3d 567, 582-583 (Del. Ch. Oct. 31, 2023).
[60] Ct. of Common Pleas Trial Tr., at 14 (Jan. 13, 2025).
[61] 6 *Del. C.* § 2-714(1).

Pleas erred by awarding Appellees damages in the amount of the full contract price.

## VII.  CONCLUSION

For the reasons discussed above, I conclude that the Court of Common Pleas has erred as a matter of law (1) with respect to its application of the Perfect Tender Rule as governing law of this case, instead of revocation of acceptance, (2) in finding breach of the implied warranty of merchantability, and (3) in its award of damages. The decision of the Court of Common Pleas is **REVERSED** and returned to the Court of Common Pleas for the purpose of receiving evidence on the proper determination of damages in accordance with this opinion.


**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz


cc:    Prothonotary